**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

ANN C. HOAK,

      Plaintiff,

v.

UNITED SPECIALTY INSURANCE
COMPANY,

      Defendant.

---

**CLASS ACTION COMPLAINT**

---

   Plaintiff Ann C. Hoak ("Hoak" or "Plaintiff") brings this action on behalf of herself and all other similarly situated persons against Defendant United Specialty Insurance Company ("USIC"). Plaintiff makes the following allegations pursuant to the investigation of her counsel, and based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

**I. NATURE OF ACTION**

   1. This is a class action for breach of contract to recover amounts for the loss of use of ski passes insured by Defendant. Plaintiff's claims are supported by the written provisions of her policy, which are materially the same as those of other policies held by the members of the proposed class.

   2. Plaintiff's ski pass insurance policy covers the cost of the ski pass against the risk of not being able to use the ski pass due to a covered peril. Defendant promised to reimburse

Plaintiff for the cost of her ski pass minus the applicable daily rate or pro-rata reduction for each day that Plaintiff used her ski pass during the 2019/2020 ski season.

3.      Despite unambiguous language in the policy, which is a fully integrated insurance agreement, Defendant breached the policy by failing to pay Plaintiff when she was unable to use her ski pass because of the COVID-19 pandemic.

4.      Defendant has caused material harm to Plaintiff and the proposed class by improperly failing to make payment.

5.      On behalf of herself and a class of similarly situated persons, Plaintiff seeks to recover compensatory, as well as declaratory and injunctive relief.

## II.   PARTIES

6.      Plaintiff Ann C. Hoak is a resident of the City of Vail in Eagle County, Colorado.

7.      Defendant USIC is a property casualty insurance company incorporated under the laws of the State of Delaware with its principal place of business in the State of Texas at 1900 L Don Dodson Drive, Bedford, Texas 76021.

## III.   JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2), because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3.2(b)(1) in that Defendant resides in this judicial district and division and a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this judicial district and division.

## IV. FACTUAL BACKGROUND

### The Epic Pass and Ski Pass Insurance

10.     Defendant USIC provides season ski pass insurance coverage whereby it promises its insureds coverage against loss of use of the insured's season ski pass.

11.     Vail Corporation d/b/a Vail Resorts Management Company ("Vail Resorts") operates more than 33 ski resorts throughout the United States. Vail Resorts Management sells "Epic Passes" promising access to skiing and snowboarding at its resorts. To visit these mountain resorts, consumers can purchase Epic Passes as: (1) annual passes for prices ranging from $319 to $979; (2) weekly passes from $391 to $766; or (3) day or multi-day passes from $67 to $766.

12.     To induce consumers to purchase Epic Passes well in advance of the ski season, and to mitigate the risk that consumers may be unable to realize the full use of their Epic Pass for reasons beyond their control, Vail Resorts offers pass insurance to its customers through USIC.

13.     Upon information and belief, Vail Resorts sold hundreds of thousands of Epic Passes for the 2019/2020 ski season.

14.     Upon information and belief, thousands of consumers purchased pass insurance through USIC.

15.     The website for Epic Pass identifies pricing for pass insurance as follows, based on the type of Epic Pass purchased:

| Pass Type | Adult/Teen | Child |
|---|---|---|
| Epic Pass | $32 | $22 |
| Military Epic Pass – Active/Retired | $17 | N/A |
| Military Epic Pass – Active/Retired Dependent | $17 | $12 |
| Military Epic Pass – Veteran | $27 | N/A |

3

| | | |
|---|---|---|
| Military Epic Pass – Veteran dependent | $27 | $17 |
| Epic Local Pass | $27 | $17 |
| Epic Day Pass | $27 | $17 |
| Summit Value Pass | $27 | $17 |
| Keystone Plus Pass | $17 | $12 |
| Park City Youth Pass | $17 | $12 |
| Tahoe Local Pass | $27 | $17 |
| Tahoe Value Pass | $17 | $12 |
| Kirkwood Pass | $27 | $17 |
| Afton Alps Pass | $17 | $17 |
| Mt. Brighton Pass | $17 | $12 |
| Wilmot Pass | $17 | $12 |

**Plaintiff's Purchase of Ski Pass Insurance**

16.     Plaintiff purchased from Vail Resorts the Epic Pass providing Plaintiff with unlimited and unrestricted access to the mountain resorts owned and/or operated by Vail Resorts for the 2019/2020 ski season, and she purchased ski pass insurance from Defendant. A true and accurate copy of the Certificate of Season Ski Pass Insurance ("Certificate") is attached hereto as Exhibit A and is incorporated herein by reference.

17.     The entire contract between Plaintiff and Defendant consists of the Certificate and the policy referred to as MASTER POLICY NUMBER: EYHBDISP0317 ("Policy").

18.     Plaintiff is the owner of the Policy, which was in force at the time of the alleged loss.

19.     Defendant is the effective and liable insurer of the Policy, and policies meeting the class definition (the "Class Policies").

4

20.     The terms of the Policy and Class Policies are not subject to individual negotiation and are materially the same for all policy owners.

**Terms of the Policy**

21.     The Policy offers the following coverage:

**PROPERTY INSURED AND COVERAGE LIMITS**: We cover the Season Ski Pass Cost you paid. We cover you against the risk of not being able to use your Season Ski Pass due to a covered peril. We will reimburse you for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that you have used your Season Ski Pass during the Ski/Snowboard Season.

22.     The Policy defines "Season Ski Pass" as follows:

**SEASON SKI PASS** – means any lift ticket access pass for multiple day usage throughout the duration of the Ski/Snowboard Season.

23.     The Policy defines the "Ski/Snowboard Season" as follows:

**SKI/SNOWBOARD SEASON** – the period starting on October 15, 2019 and ending on April 15, 2020.

24.     The Policy defines "Season Ski Pass Cost" as follows:

**SEASON SKI PASS COST** – Means the purchase price of the Season Ski Pass.

25.     The Policy defines the "Daily Rate" as follows:

**DAILY RATE** – means $95 per day for an adult pass (age 13 and up) at all Destination Resorts except; $50 per day at Stevens Pass, Okemo, Stowe and Sunapee; $35 per day at Afton Alps, Mt. Brighton and Wilmot Mtn. **DAILY RATE** for a child pass (age 12 and under) is $35 per day at all Destination Resorts except $15 per day at Afton Alps, Mt. Brighton and Wilmot Mtn. The DAILY RATE does not apply to Epic Day Pass. Usage reduction for Epic Day pass will be pro-rated for each usage day and if all days have been used there is no refund.

26.     The Policy defined the "Covered Peril" as follows:

**PERILS INSURED AGAINST**: Subject to the Exclusions and Coverage Limits, the Insured has coverage against Loss of use of your Season Ski Pass if caused by any one of the following unforeseen perils ***occurring after the effective date of coverage:***

…

> e) you are subpoenaed, required to serve on a jury, hijacked, **quarantined** or your travel visa is denied; (emphasis added)

27.     The term "quarantined" is not expressly defined within the Policy but is commonly understood to mean: "to detain in or exclude by quarantine," "to isolate from normal relations," "a restraint upon the activities or communication of persons…designed to prevent the spread of disease…," "to exclude, detain, or isolate for political, social, or hygienic reasons," and "a system of measures maintained by governmental authority at ports, frontiers, etc., for preventing the spread of disease." *See Merriam-Webster Dictionary; Dictionary.com.*

28.     The Policy defines Loss as follows:

> **LOSS** – means your inability to use your Season Ski Pass due to an unforeseen event, occurrence or circumstance.

29.     The Policy contains no applicable exclusions for viruses, pandemics, related government orders or actions taken by Vail Resorts, independently or pursuant to such government orders.

**Plaintiff's Purchase of Ski Pass Insurance**

30.     On September 3, 2019, Plaintiff purchased a season Epic Pass for $939 providing her with unlimited access to the Mountain Resorts owned by Vail Resorts.

31.     On September 3, 2019, Plaintiff purchased the Policy from USIC for $32.

32.     As of March 14, 2020, Plaintiff had skied 3 days: February 14, 2020, February 21, 2020, and March 1, 2020.

**Plaintiff's Loss**

33.     On March 15, 2020, Vail Resorts announced it was closing all its mountain resorts in response to the COVID-19 pandemic.

34.     As a result of the closure, Plaintiff was restrained from entering upon and using the facilities of any of the Vail Resort properties and deprived of the use of her Season Epic Pass.

35.     Eagle County, Colorado, where Plaintiff resides, the Governor of Colorado and the President of the United States all issued various orders, limiting human contact and restricting travel and activities to only those considered essential.

36.     Skiing and snowboarding are considered non-essential activities.

37.     Upon information and belief, all the jurisdictions in which the 33 properties owned and/or operated by Vail Resorts were subject to some form of government order related to the COVID-19 pandemic which precluded Plaintiff from using her Season Epic Pass.

38.     Plaintiff is entitled to receive from Defendant payment of the cost of her ski pass ($939) less the applicable daily rate ($95 per day) for each day (3 days) that she used her Season Epic Pass during the Ski/Snowboarding Season. Therefore, Plaintiff is entitled to compensation in the amount of $654 ($939 - $285 = $654).

39.     On April 7, 2020, Plaintiff gave prompt notice and provided the requested information to USIC through its authorized representative as identified in the Policy: American Claims Management ("ACM").

40.     Any documentation requested was provided to ACM within 90 days after the Covered Loss occurred.

41.     By letter dated April 10, 2020, ACM acknowledged receipt of Plaintiff's claim ("Acknowledgement Letter"), a copy of which is attached hereto as Exhibit B.

42.     In a separate letter, also dated April 10, 2020 ("Coverage Position"), attached as Exhibit C, ACM stated that it had "carefully reviewed the insurance policy referenced above as well as the factual basis of the presented claim" but was not making payment or recommending payment because it was still determining whether coverage exists.

43.    The Coverage Position further asserted as follows:

(a) In review, the concern of contracting the virus may not be covered under peril (a) because it is not considered **Sickness**, as defined by the policy, unless your physician certifies you actually contracted the disease. The policy may not provide you reimbursement for governmental authority(s) recommendation or to avoid, or bars travel, and/or "hold in place".

(b) Anxiety, depression, psychological disorders, etc., experienced due to concerns of the virus, travel restrictions imposed, causing the inability to use your pass could disqualify any reimbursement pursuant to **exclusion (d).**

(c) Further, Vail's decision to close their resorts due to the concern of COVID-19 may not be covered under peril (d) since the reason of the closure is not a **Natural Disaster** as that term is defined by the policy.

(d) In regard to peril (i), in the event a student's school closed early and the student returned home for on-line classes, it is possible no coverage exists for that cause of losing the ability to use the ski/snowboard season pass.

44.    The Coverage Position concluded by stating the Defendant's position as follows:

At this time, a final coverage determination has not been made whether pass holders with insurance will receive a reimbursement.

45.    The Denial Letter failed to address and ignored altogether peril (e) which expressly provided coverage if the insured was "quarantined".

46.    Plaintiff's claim for her Loss under the Policy remains unsatisfied.

47.    Plaintiff and other purchasers of USIC's pass insurance have made timely claim for payment of the benefits due under their policies, but USIC has failed to make payment without just cause or excuse.

## V.    CLASS ACTION ALLEGATIONS

48.    Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of herself and all others similarly situated, and seeks to represent the following class:

49.     All persons who purchased an Epic Pass for the 2019/2020 ski season and purchased from Defendant pass insurance on their Epic Pass, the terms of which provide or provided against loss of use of the insured's season ski pass.

50.     Excluded from the class is Defendant, any entity in which Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

51.     Plaintiff's claims satisfy the numerosity, typicality, adequacy, commonality and superiority requirements under Federal Rule of Civil Procedure 23, as set forth more fully herein.

52.     The persons who fall within the class number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable.

53.     Class members are readily ascertainable from information and records in Defendant's possession, custody, or control. Notice of this action can readily be provided to the class.

54.     There are questions of law and fact common to the claims of Plaintiff and the class that predominate over any questions affecting only individual class members. The questions of law and fact arising from Defendant's actions that are common to the class include, without limitation:

      a.     Whether the order and directive from the CEO for Vail Resorts closing all 33 resorts in the United States constituted a quarantine under the terms of the Policy because it was "an unforeseen event, occurrence, or circumstance" that restrained class

members from entering upon and using the facilities of Destination Resorts for the purposes permitted by the Epic Pass;

b.   Whether governmental orders applicable to class members were an "unforeseen event, occurrence, or circumstance" that constituted a quarantine by restraining class members from traveling to Destination Resorts, engaging in activities, and using the Epic Pass for its intended purpose;

a.   Whether Defendant breached the terms of the Class Policies;

b.   Whether the class sustained damages as a result of Defendant's breaches of contract;

c.   Whether the class is entitled to damages, restitution, and/or other equitable relief; and

d.   Whether the class, or a subset of the class, is entitled to declaratory relief stating the proper construction and/or interpretation of the Class Policies.

55.   The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

56.   Plaintiff's claims are typical of the claims of the class in that Plaintiff and the class members all purchased ski pass insurance policies containing the same or similar terms including, in particular, what constitutes a Covered Peril.

57.   Plaintiff will fairly and adequately protect and represent the interests of the proposed class, because her interests are aligned with, and not antagonistic to, those of the proposed class, and she is represented by counsel who are experienced and competent in the

prosecution of class action litigation, and have particular expertise with class action litigation on behalf of purchasers of insurance policies.

58.     Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the class to bring a separate action. Because of the relatively small size of individual class members' claims, absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I: BREACH OF CONTRACT

59.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

60.     Plaintiff and the class purchased ski pass insurance from Defendant.

61.     The Policy and Class Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

62.     Plaintiff and the class members substantially performed their obligations under the terms of the Policy and Class Policies.

63.     Plaintiff and the class members suffered a Loss from a Covered Peril.

64.     Defendant has failed to compensated Plaintiff and class members for their respective Losses as required by the Policy.

65.     As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT II: DECLARATORY AND INJUNCTIVE RELIEF

66.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

67.     An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other, concerning the respective rights and duties of the parties under the Policy and Class Policies.

68.     Plaintiff contends that Defendant has breached the Policy and Class Policies by failing to timely pay Class Members for their respective Losses by reimbursing each member of the class for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that the member has used his/her Season Ski Pass during the Ski/Snowboard Season.

69.     Plaintiff, therefore, seeks a declaration of the parties' respective rights and duties under the Policy and Class Policies and requests the Court to declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy and Class Policies so that future controversies may be avoided.

70.     Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy and Class Policies; and (2) ordering Defendant to comply with the terms of the Policy and Class Policies including payment of all amounts due.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

(a)     That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b)     For a judgment against Defendant for the causes of action alleged against it;

(c)     For compensatory damages in an amount to be proven at trial;

(d)     For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy and Class Policies;

(e)     For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policy and Class Policies;

(f)     For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(g)     For Plaintiff's attorney's fees;

(h)     For Plaintiff's costs incurred; and

(i)     For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

April 23, 2020               Respectfully submitted,

**MILLER SCHIRGER, LLC**

s/ Joseph M. Feierabend
John J. Schirger
Matthew W. Lytle
Joseph M. Feierabend
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
816-561-6500
816-561-6501 (f)
jschirger@millerschirger.com
mlytle@millerschirger.com
jfeierabend@millerschirger.com

- And -

Norm Siegel
**STUEVE SIEGEL HANSON LLP**

460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100
816-714-7101 (f)
siegel@stuevesiegel.com l

*Attorneys for Plaintiff Ann C. Hoak*

14

Exhibit A

## CERTIFICATE OF SEASON SKI PASS INSURANCE

**UNITED SPECIALTY INSURANCE COMPANY**
**SEASON SKI PASS INSURANCE COVERAGE UNDER MASTER POLICY NUMBER: EYHBDISP0317**
This is to certify that the undersigned has arranged insurance as hereinafter specified and underwritten by United Specialty Insurance Company.
Please keep this document as your record of coverage under the plan.

**INSURING AGREEMENT:** We will provide insurance under the Master Policy in consideration of your payment of the Premium.
**EFFECTIVE DATE OF COVERAGE:** This insurance will be effective immediately upon acceptance by us of the Premium and shall remain in effect until the last day of the Ski/Snowboard Season or the date upon which ski operations are ceased due to an unforeseen event, whichever is earlier.
**PROPERTY INSURED AND COVERAGE LIMITS:** We cover the Season Ski Pass Cost you paid. We cover you against the risk of not being able to use your Season Ski Pass due to a covered peril. We will reimburse you for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that you have used your Season Ski Pass during the Ski/Snowboard Season.

**PERILS INSURED AGAINST:** Subject to the Exclusions and Coverage Limits, the Insured has coverage against Loss of use of your Season Ski Pass if caused by any one of the following unforeseen perils _occurring after the effective date of coverage:_

a) Sickness, Injury or death of you or a Family Member;
b) You have a Pregnancy or Childbirth verified by medical records; coverage is included for pregnant Season Ski Pass Holder's spouse or domestic partner and minor child;
c) Your Primary Residence being made Uninhabitable by Natural Disaster;
d) The Destination Resort closes indefinitely due to a Natural Disaster (this coverage does not apply if you reside in a state with more than one Destination Resort and at least one of the other Destination Resorts is operating);
e) You are subpoenaed, required to serve on a jury, hijacked, quarantined or your travel visa is denied;
f) You are called to military service: your military leave is revoked; you are deployed or you are reassigned;

g) You **or a resident relative** have an involuntary, employer-initiated transfer that: (i) is within the same organization for which you **or a resident relative** have been continuously employed for at least one year immediately preceding the transfer; and **(ii)** involves your **or a resident relatives** relocation to a Primary Residence 100 or more miles from your current Primary Residence;
h) You **or a resident relative** are involuntarily terminated or laid off by an employer for whom you **or a resident relative** have been continuously employed for at least one-year immediately preceding the termination or lay off; or involves a non-renewal of a work visa. This provision is not applicable to temporary employment, independent contractors or self-employed persons;
i) You are a Student (i) who transfers to a school located 100 or more miles from your current school: (ii) who is accepted into a foreign study program that will cause you to be out of the country during the ski season: (iii) who graduates and accepts a job that is 100 or more miles from your current residence.
j) You are unable to use your Season Ski Pass due to the inability to travel to the United States due to a U.S. Tourist Visa rejection or denial or failure to obtain the visa required to enter the United States. Evidence of visa application and copy of formal rejection or denial will be required as proof of loss.

**EXCLUSIONS:** We do not cover any Loss caused by or resulting from:

a) an intentional act, except for suicide or attempted suicide by you or a family member.
b) any felony or criminal acts committed by you;
c) mental, nervous or psychological conditions or disorders, including but not limited to: anxiety, depression, neurosis, phobia, psychosis, or any related physical manifestations thereof;
d) use of narcotics, controlled substances or alcohol;
e) Loss that occurs when this coverage is not in effect;
f) An Injury, Sickness or other medical condition which, within the 120 day period immediately preceding your coverage effective date: (i) first manifested itself, worsened or became acute or had symptoms which would have prompted a reasonable person to seek diagnosis, care or treatment: (ii) for which care or treatment was given or recommended by a Physician: or (iii) required taking prescription drugs or medicines, unless the condition for which the drugs or medicines are taken remains controlled without any change in the required prescription drugs or medicines.
h) Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending or expected attack, by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces: or by military, naval or air forces or by an agent of any such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such governmental power, authority or forces. Civil disorder, riot, insurrection, rebellion, revolution, civil war, usurped power or action taken by governmental authority in hindering, combating or defending against such an occurrence, and seizure or destruction under quarantine, or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

Exclusion g. is waived if the following conditions are met: 1. The Season Ski Pass Insurance is purchased at the same time you make the Initial Payment for the Season Ski Pass: or 2. All the Insured's are medically able to ski/snowboard when the Season Ski Pass Insurance Cost is paid. The Initial Payment means the first payment made to the Insured's Season Ski Pass Supplier toward the cost of the Season Ski Pass.

**DEFINITIONS:**
**DAILY RATE** – means $95 per day for an adult pass (age 13 and up) at all Destination Resorts except: $50 per day at Stevens Pass, Okemo, Stowe and Sunapee: $35 per day at Afton Alps, Mt. Brighton and Wilmot Mtn. **DAILY RATE** for a child pass (age 12 and under) is $35 per day at all Destination Resorts except $15 per day at Afton Alps, Mt. Brighton and Wilmot Mtn. The DAILY RATE does not apply to Epic Day Pass. Usage reduction for Epic Day pass will be pro-rated for each usage day and if all days have been used there is no refund.
**DESTINATION RESORT** – means the ski resort where you expected to use your Season Ski Pass.
**INJURY** – in the case of you means accidental bodily injury that occurs while your coverage is in effect that prevents your use of your Season Ski Pass, as certified by a Physician at the time of Loss: and as to a Family Member, means accidental bodily injury that occurs while your coverage is in effect and that is either life threatening or requires your care, as certified by a Physician.
**INSURED** – means any person for whom the Premium has been paid and accepted by us.
**FAMILY MEMBER -** means the Season Ski Pass Holder's spouse, child, domestic partner, daughter-in-law, son-in-law, brother, sister, mother, father, grandparents, grandchild, step-child, step-brother, step-sister, step-parents, parents-in-law, brother-in-law, sister-in-law, aunt, uncle, niece, nephew, legal guardian, caregiver, foster child, ward or legal ward.
**LOSS –** means your inability to use your Season Ski Pass due to an unforeseen event, occurrence or circumstance.
**NATURAL DISASTER** – means a flood, hurricane, tornado, earthquake, fire, wildfire, volcanic eruption, or blizzard that is due to natural causes.
**PHYSICIAN** – means a licensed practitioner including medical, surgical, or dental, services acting within the scope of his/her license. The treating Physician may not be the Season Ski Pass Holder, Insured, a traveling companion, a Family Member, or a business partner.
**PREMIUM** – means the amount paid for the Season Ski Pass insurance coverage. Premium is 100% fully earned at inception. Premium includes 3% Colorado Surplus Lines Tax.
**PRIMARY RESIDENCE** – means your fixed, permanent and principal home for legal and tax purposes.
**RESIDENT RELATIVE** – means a person who is either the spouse (or domestic partner) or blood relation of the Insured and lives in the same home.
**SEASON SKI PASS HOLDER** – means the person whose name and likeness appear on the Season Ski Pass issued by the Season Ski Pass Supplier.

**SEASON SKI PASS SUPPLIER** – means any company that provides a Season Ski Pass for purchase.

**SEASON SKI PASS** – means any lift ticket access pass for multiple day usage throughout the duration of the Ski/Snowboard Season.

**SICKNESS** – in the case of you means an illness or disease diagnosed while your coverage is in effect that is treated by a Physician and that prevents your use of your Season Ski Pass, as certified by a Physician at the time of Loss; and as to a Family Member means an illness or disease diagnosed while your coverage is in effect that is treated by a Physician that is either life threatening or requires your care, as certified by a Physician.

**SKI/SNOWBOARD SEASON** – the period starting on October 15, 2019 and ending on April 15, 2020.

**SEASON SKI PASS COST** – means the purchase price of the Season Ski Pass.

**STUDENT** – means college student with at least twelve (12) credits for undergrads or six (6) for graduate students.

**UNINHABITABLE** - means the building structure is unstable and there is risk of collapse in whole or in part; or there is exterior or structural damage allowing elemental intrusions, such as rain, wind, hail or flood; or there are immediate safety hazards that have yet to be cleared and the home cannot be occupied.

**WE, US, or OUR** – means United Specialty Insurance Company.

**YOU or YOUR** – means the Insured, as the context requires.

**TERMINATION OF INSURANCE:** This insurance shall automatically terminate without notice to you on the last day of the Ski/Snowboard Season.

**VALUATION:** The value of the Season Ski Pass will be determined at the time of Loss and will be the Season Ski Pass Cost minus the applicable Daily Rate for each day (or portion thereof) that you have used of your Season Ski Pass during the Ski/Snowboard Season.

**OTHER INSURANCE:** If a Loss is also covered by other insurance, we will pay only the proportion of the Loss that this amount of insurance bears to the total amount of insurance covering the Loss.

**DUTIES YOU HAVE AFTER A LOSS:** You will give prompt notice to our authorized representative, listed below.  The notice should include: a description of the Loss, the name of the Season Ski Pass Supplier, the Season Ski Pass Cost, and the date the Season Ski Pass was purchased.  All claims under the Policy **must be submitted as soon as reasonably possible but, in any event, no later than July 15, 2020.**

| | | |
|---|---|---|
| IF YOU HAVE A LOSS: write to: | American Claims Management P.O. Box 9030 Carlsbad, CA  92011-9030 | Telephone  #1-877-895-1297 *International Calling:  +1-385-219-3411* |
| Or email to: | NewLosses@ACMClaims.com | Or fax #760-827-4081 |
| Or report online via smartphone or computer | https://www.acmclaims.com/secureforms2/claim/vail | |

**PROOF OF LOSS:  Documentation requested must be provided to American Claims Management no more than 90 days after a covered Loss occurs or claim is made, or as soon after that as is reasonably possible.  Failure to provide acceptable proof of loss will cause your claim to be closed without payment.**

**CONCEALMENT, MISREPRESENTATION AND FRAUD:** If you commit fraud by intentionally concealing or misrepresenting a material fact concerning the insurance evidenced by this Certificate you will void your insurance under this policy and be subject to prosecution.

**EXAMINATION UNDER OATH:** Before recovering for any Loss, if requested, you:
Will send us a sworn statement of loss containing the information we request to settle your claim within 60 days of our request;
Will agree to examinations under oath at our request;
Will produce others for examination under oath at our request;
Will provide us with all pertinent records needed to prove the loss; and
Will cooperate with us in the investigation or settlement of the loss

**LOSS PAYMENT/OTHER RECOVERIES:** We will pay or make good any covered Loss under the insurance evidenced by this Certificate within 30 days after we reach agreement with you, or the entry of final judgment or the filing of an arbitration award, whichever is earlier.  We will not be liable for any part of a Loss which has been paid or made good by others.

**LEGAL ACTION AGAINST US:** No one may bring legal action against us unless there has been full compliance with all terms of the insurance evidenced by this Certificate; and such action is brought within one  year after you first have knowledge of a Loss.

**TRANSFER OF COVERAGE:** Coverage under the policy cannot be transferred by the Insured to anyone else.

**OPTIONAL ARBITRATION:**  In the event you and we fail to agree as to the interpretation or applicability of any of the terms of our Insurance, you may elect to resolve the disagreement by binding arbitration in accordance with the statutory rules and procedures of the state of Colorado or in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  This option is granted to you subject to the following terms and conditions:
Any arbitration claim instituted to determine coverage under the insurance evidenced by this Certificate must be filed within one year of the occurrence causing the Loss (which in the case of Sickness is the date you first experience symptoms, and in the case of Injury is the date the Injury occurs).
This optional arbitration clause is intended to grant an additional right to you.  All other terms and conditions of this contract remain the same, and no rights or duties of yours or ours shall be diminished or negated by reason of this clause or exercise of this option.

**CANCELLATION:** The insurance evidenced by this Certificate may be canceled at any time by you, upon providing notice in writing to us or Beecher Carlson Insurance Services LLC. Premium is fully earned and there shall be no return premium due you.

**CHANGES:** This Certificate and the Master Policy contains agreements between you and us concerning the insurance afforded. This Certificate's terms can be amended or waived only by endorsement issued by us and made a part of the Master Policy.

**SERVICE OF SUIT:**  In the event the Company fails to pay any amount claimed to be due, the Company, at the insured's request, will submit to a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such court. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the Statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designated the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**IF YOU HAVE ANY QUESTIONS REGARDING THE INSURANCE COVERAGE PROVIDED BY THIS CERTIFICATE:  Please contact your agent:**

Beecher Carlson Insurance Services
8000 E. Maplewood Ave.,  Suite 350
Greenwood Village, CO  80111

*Telephone  # 303-996-5456 or 303-996-5413*
*Or fax #770-870-3067*
*Or email:  btaylor@beechercarlson.com or shayes@beechercarlson.com*

*This contract is delivered as a surplus lines coverage under the "Nonadmitted Insurance Act".  The insurer issuing this contract is not licensed in Colorado but is an approved nonadmitted insurer.  There is no protection under the provisions of the "Colorado Guaranty Association Act."*

Certificate of Insurance – Ski Pass Coverage v1 2019-20 season

Exhibit B

**American Claims Management**
PO Box 9030
Carlsbad, CA 92018-9030

Innovative Solutions.
Exceptional Results.

April 10, 2020

Ann Hoak
2418 Garmisch Dr #1
Vail, CO 81657

RE:   Acknowledgement

| | | |
|---|---|---|
| Guest | : | Ann Hoak |
| Incident Date | : | 03/14/2020 |
| ACM Claim No. | : | 69064491 |

Dear Ann Hoak:

American Claims Management, Inc. ("ACM") is the third party claims administrator for the Pass Insurance Program. We acknowledge receipt of the claim you have submitted.  Please be advised that your pass will be inactivated while the claim is being investigated.

In order to process your claim, additional documentation is required to support your claim for reimbursement.  At this time, we are requesting for the information below which matches your cancellation reason:

**MEDICAL CONDITION:**
Please have your physician complete the attached medical claim form if you or a family member has suffered a medical condition that prevents the use of the ski pass. NOTE: Physician will need to verify name of any primary caregiver should the medical condition require their care and cause loss of use of their ski pass.

**PREGNANCY:**
Please have your physician complete the attached medical claim form if you are unable to use the ski pass due to a pregnancy.

**DEATH:**
Please forward the death certificate, or have your physician complete the attached claim form if you or a family member is unable to use the ski pass for this reason.

**ACTIVE MILITARY SERVICE:**
Please forward a copy of the military documentation proving deployment or military leave reassignment.

**EMPLOYER TRANSFER:**
Please forward relocation documents from your employer outlining the terms of the involuntary, employer-initiated transfer. NOTE: Employer relocation is a qualifying reason if you have been continuously employed within the same organization for at least one year and involves the relocation of your primary residence of 100 or more miles.
Please provide the following documentation on company letterhead:
  • The name of your employer
  • The job title and date of hire
  • The location you are relocating from and the location where you will be relocated to
  • The effective date of the relocation and the date you were first notified of the transfer
  • Your primary residence upon completion of the relocation
  • Any documentation that would prove your employment with the company of at least 1 year,
    such as a pay stub
** Employer must confirm that this was an involuntary transfer**

American Claims Management
PO Box 9030
Carlsbad, CA 92018-9030

Innovative Solutions.
Exceptional Results.

**INVOLUNTARY JOB TERMINATION:**
Please provide documentation proving the involuntary termination of employment. NOTE: Employer termination is a qualifying reason if you have been continuously employed for at least one year preceding the termination.
Please provide the following documentation:
* Date you were first notified of termination
* Official termination letter from your employer
* Any documentation that would prove your employment with the company of at least 1 year, such as a pay stub
** Employer must confirm that this was an involuntary termination**

**COURT APPEARANCE/JURY DUTY:**
Please provide a copy of the legal document proving you were subpoenaed, called for jury duty, or are hijacked or quarantined and unable to utilize the ski pass.

**NATURAL DISASTER:**
Please provide a police report, or other local authority reports or documentation proving your primary residence or destination is uninhabitable due to a natural disaster.

**STUDENT RELATED CANCELLATION:**
Please provide one of the following documents that is applicable to your specific circumstance: 1) school transfer documents that indicate you have relocated more than 100 miles from your current school; 2) a study abroad acceptance letter outlining the dates that you will be out of the country; 3) a copy of your diploma and a letter from your employer that indicates you have relocated more than 100 miles from your current residence in order to accept the position.

**VISA REJECTION OR FAILURE TO OBTAIN:**
Please provide a copy of your visa application and a copy of the formal rejection or denial of your visa.

The adjuster assigned to handle your claim is noted below.  Please forward the requested information to your adjuster via mail, fax, or email:

Kiara Torres Jimenez
American Claims Management, Inc.
P.O. Box 9030
Carlsbad, CA 92018-9030
(760) 710-6876
Fax number:  (760) 827-4081
kjimenez@acmclaims.com

Please be advised that this letter should not be construed that your claim has been accepted.  Once we confirm coverage, pass usage, and review your proof of claim, we will confirm if your claim for reimbursement has been accepted, denied or if additional information is required.

**Any person knowingly presents false or fraudulent claim for the payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and maybe subject to fines and confinement in prison.**

If you should have any questions or concerns, please contact the undersigned at the number listed above.

Very truly yours,

Kiara Torres Jimenez
Claims Adjuster

TOL 877.895.1297
FAX 619.744.5094
CA License #2C37446



American Claims Management
PO Box 9030
Carlsbad, CA 92018-9030

*Innovative Solutions.*
*Exceptional Results.*

## CLAIM FORM

### (MEDICAL & PREGNANCY FORM ONLY)

Ann Hoak
69064491

**Please complete this form in its entirety, and return it to the address noted above with the requested documentation. Note, filing a cancellation/interruption claim will automatically deactivate your season ski pass. The following documentation is required to process your claim:**

**Attending Physician's Statement:**
**To be completed by the physician certifying cancellation of the ski pass**.

| | | |
|---|---|---|
| **Patient Name:** | **Age:** | **Date of Birth:** |
| **Address:** | **City:** **State:** | **Zip:** |
| **Please indicate the medical diagnosis that required cancellation/interruption of season ski pass:** | | |
| | | |
| **Date of Diagnosis:** | **Diagnosis Code:** | |
| **Has the patient previously been treated for this condition?** | | |
| **Date of the first treatment for the diagnosis noted above:** | | |
| **List all treatment dates:** | | |
| **Based on your diagnosis do you recommend patient refrain from skiing activities for the winter ski season?** | | |
| **If yes, was an examination performed?** | | |
| **Date of Examination:** | | |
| **Date you recommended cancellation/interruption of the season ski pass:** | | |
| **Due to the diagnosis is the patient required to have a primary caregiver?** | | |

*All statements above are true and factual, reflecting my best medical judgment. Any false or misleading statements made in support of and resulting in the payment of a claim shall be subject to legal action for collection of damages to the Insurance Company against the person or persons making such false and or misleading statements.*

| | |
|---|---|
| **Date:** | **Attending Physician's Signature:** |
| **Address:** | **Fax number:** |
| **City:** **State:** **Zip:** | **Email address:** |
| **Phone:** | **Physician's Stamp:** |

Exhibit C

ACM

American Claims Management
PO Box 9030
Carlsbad, CA 92018-9030

Innovative Solutions.
Exceptional Results.

April 10, 2020

Ann Hoak
2418 Garmisch Dr #1
Vail, CO 81657

| | | |
|---|---|---|
| Claim Number | : | 69064491 |
| Date of Loss | : | 03/14/2020 |
| Re | : | Certificate of Ski Pass Insurance |
| Season | : | 19-20 |

Dear Ann Hoak:

American Claims Management (hereinafter "ACM") is the authorized claims representative of United Specialty Insurance Company (hereinafter "USIC"). On behalf of USIC, we acknowledge the claim you made regarding the COVID-19 (or "virus") crisis and/or Vail's early closure of their North American resorts. Difficult decisions have been made to prioritize the health and wellbeing of our communities and our global population.

In the event you submitted your premium, USIC issued Season Ski Pass insurance (hereinafter "policy") to you for the 2019-2020 ski/snowboard season. A copy of that policy is available to you via the FAQ section of following web link https://www.epicpass.com/info/pass-insurance.aspx. We are happy to provide you with a copy of the policy upon your request.

In considering coverage, we have carefully reviewed the insurance policy referenced above as well as the factual basis of the presented claim. Based upon our review, we issue this letter to inform you that USIC reserves it rights to further our evaluation of your claim and the policy to determine whether coverage exists. We will provide you with additional information as soon as it is readily available.

Our coverage position is explained below.

### The Policy

We discuss below certain provisions of the USIC policy. Please note, however, that our discussion involves only a partial recitation of the terms, conditions, limitations and exclusions contained in the USIC policy. It is not intended to supplement, amend, supersede or otherwise alter the USIC policy. USIC does not intend to waive any provision of the USIC policy by virtue of its discussion. Please consult your copy of the USIC policy for a complete listing of all the terms, conditions, limitations and exclusions contained therein.

*INSURING AGREEMENT: We will provide insurance under the Master Policy in consideration of your payment of the Premium.*

*PROPERTY INSURED AND COVERAGE LIMITS: We cover the Season Ski Pass Cost you paid. We cover you against the risk of not being able to use your Season Ski Pass due to a covered peril. We will reimburse you for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that you have used your Season Ski Pass during the Ski/Snowboard Season.*

*PERILS INSURED AGAINST: Subject to the Exclusions and Coverage Limits, the Insured has coverage against Loss of use of your Season Ski Pass if caused by any one of the following unforeseen perils occurring after the effective date of coverage:*

TOL 877.895.1297
FAX 619.744.5094
CA License #2C37446



American Claims Management
PO Box 9030
Carlsbad, CA 92018-9030

Innovative Solutions.
Exceptional Results.

*a) Sickness, Injury or death of you or a Family Member;*

*d) The Destination Resort closes indefinitely due to a Natural Disaster (this coverage does not apply if you reside in a state with more than one Destination Resort and at least one of the other Destination Resorts is operating);*

*e) You are subpoenaed, required to serve on a jury, hijacked, quarantined or your travel visa is denied;*

*i) You are a Student (i) who transfers to a school located 100 or more miles from your current school; (ii) who is accepted into a foreign study program that will cause you to be out of the country during the ski season; (iii) who graduates and accepts a job that is 100 or more miles from your current residence.*

**EXCLUSIONS:** *We do not cover any Loss caused by or resulting from:*

*d) mental, nervous or psychological conditions or disorders, including but not limited to: anxiety, depression, neurosis, phobia, psychosis, or any related physical manifestations thereof;*

*f) Loss that occurs when this coverage is not in effect;*

**DEFINITIONS**

**EFFECTIVE DATE OF COVERAGE:** *This insurance will be effective immediately upon acceptance by us of the Premium and shall remain in effect until the last day of the Ski/Snowboard Season or the date upon which ski operations are ceased due to an unforeseen event, whichever is earlier.*

**DAILY RATE** *– means $95 per day for an adult pass (age 13 and up) at all Destination Resorts except; $50 per day at Stevens Pass, Okemo, Stowe and Sunapee; $35 per day at Afton Alps, Mt. Brighton and Wilmot Mtn. DAILY RATE for a child pass (age 12 and under) is $35 per day at all Destination Resorts except $15 per day at Afton Alps, Mt. Brighton and Wilmot Mtn. The DAILY RATE does not apply to Epic Day Pass. Usage reduction for Epic Day pass will be pro-rated for each usage day and if all days have been used there is no refund.*

**FAMILY MEMBER** *- means the Season Ski Pass Holder's spouse, child, domestic partner, daughter-in-law, son-in-law, brother, sister, mother, father, grandparents, grandchild, step-child, step-brother, step-sister, step-parents, parents-in-law, brother-in-law, sister-in-law, aunt, uncle, niece, nephew, legal guardian, caregiver, foster child, ward or legal ward.*

**NATURAL DISASTER** *– means a flood, hurricane, tornado, earthquake, fire, wildfire, volcanic eruption, or blizzard that is due to natural causes.*

**PHYSICIAN** *– means a licensed practitioner including medical, surgical, or dental, services acting within the scope of his/her license. The treating Physician may not be the Season Ski Pass Holder, Insured, a traveling companion, a Family Member, or a business partner.*

**SICKNESS** *– in the case of you means an illness or disease diagnosed while your coverage is in effect that is treated by a Physician and that prevents your use of your Season Ski Pass, as certified by a Physician at the time of Loss; and as to a Family Member means an illness or disease diagnosed while your coverage is in effect that is treated by a Physician that is either life threatening or requires your care, as certified by a Physician.*

**Insurance Company Position**



**American Claims Management**
PO Box 9030
Carlsbad, CA 92018-9030

Innovative Solutions.
Exceptional Results.

Please be advised that regardless of the reason causing you to lose the ability to use your pass, if you are not an insured, you are ineligible for reimbursement of your pass price, or any portion thereof, from the policy. Please also note there is no reimbursement of the cost of your pass if the number of times you used your pass, multiplied by the applicable daily rate, exceeds your pass price.

In review, the concern of contracting the virus may not be covered under peril (a) because it is not considered **Sickness**, as defined by the policy, unless your physician certifies you actually contracted the disease. The policy may not provide you reimbursement for governmental authority(s) recommendation or to avoid, or bars travel, and/or "hold in place".

Anxiety, depression, psychological disorders, etc., experienced due to concerns of the virus, travel restrictions imposed, causing the inability to use your pass could disqualify any reimbursement pursuant to **exclusion (d).**

Further, Vail's decision to close their resorts due to the concern of COVID-19 may not be covered under peril (d) since the reason of the closure is not a **Natural Disaster** as that term is defined by the policy.

In regard to peril (i), in the event a student's school closed early and the student returned home for on-line classes, it is possible no coverage exists for that cause of losing the ability to use the ski/snowboard season pass.

At this time, a final coverage determination has not been made whether pass holders with insurance will receive a reimbursement.

USIC reserves the right under the policy and applicable law to cite additional policy provisions as may be appropriate that may further limit the application of coverage under the applicable coverage parts of the USIC policy. The foregoing letter is premised upon the information previously obtained, and the terms and conditions of the policy. By limiting policy references to those cited, USIC does not waive any other policy provisions. The insurance policy in its entirety is incorporated by reference as if it had been stated in full.

We sincerely hope that all of you, your friends and your loved ones remain safe during this unprecedented time and that the world comes together to move past the challenges we currently face.

Sincerely,

Kiara Torres Jimenez
Claims Adjuster
(760) 710-6876
Fax number: (760) 827-4844
kjimenez@acmclaims.com

TOL 877.895.1297
FAX 619.744.5094
CA License #2C37446

# U.S. District Court - District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:20-cv-01152-CMA-GPG

| | |
|---|---|
| Hoak v. United Specialty Insurance Company | Date Filed: 04/23/2020 |
| Assigned to: Judge Christine M. Arguello | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Gordon P. Gallagher | Nature of Suit: 110 Insurance |
| Cause: 28:1332 Diversity-Breach of Contract | Jurisdiction: Diversity |

**<u>Plaintiff</u>**

**Ann C. Hoak**        represented by   **Ethan Michael Lange**
Stueve Siegel Hanson LLP-Kansas City
460 Nichols Road
Suite 200
Kansas City, MO 64112-2003
816-714-7100
Fax: 816-714-7101
Email: lange@stuevesiegel.com
*ATTORNEY TO BE NOTICED*

**John J. Schirger**
Miller Schirger, LLC
4520 Main Street
Suite 1570
Kansas City, MO 64111
816-561-6500
Fax: 816-561-6501
Email: jschirger@millerschirger.com
*ATTORNEY TO BE NOTICED*

**Matthew William Lytle**
Miller Schirger, LLC
4520 Main Street
Suite 1570
Kansas City, MO 64111
816-561-6500
Fax: 816-561-6501
Email: mlytle@millerschirger.com
*ATTORNEY TO BE NOTICED*

**Patrick Stueve**
Stueve Siegel Hanson LLP-Kansas City
460 Nichols Road
Suite 200
Kansas City, MO 64112-2003
816-714-7100
Fax: 816-714-7101
Email: stueve@stuevesiegel.com
*ATTORNEY TO BE NOTICED*

**Stephen Robert Miller**
Miller Schirger, LLC
4520 Main Street
Suite 1570
Kansas City, MO 64111
816-561-6500
Fax: 816-561-6501
Email: smiller@millerschirger.com
*ATTORNEY TO BE NOTICED*

**Joseph Michael Feierabend**
Miller Schirger, LLC
4520 Main Street
Suite 1570
Kansas City, MO 64111
816-561-6500
Fax: 816-561-6501
Email: jfeierabend@millerschirger.com
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**John Nevraumont**　　　　　　　represented by　**Ethan Michael Lange**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John J. Schirger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew William Lytle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Stueve**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Robert Miller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Michael Feierabend**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Sunit Anandwala**　　　　　　　represented by　**Ethan Michael Lange**
*on behalf of themselves and all others*　　　　(See above for address)
*similarly situated*　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**John J. Schirger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew William Lytle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Stueve**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Robert Miller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Michael Feierabend**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United Specialty Insurance Company**          represented by   **Adrian Peter Castro**
Fairfield & Woods, P.C.
1801 California Street
Suite 2600
Denver, CO 80202-2645
303-830-2400
Fax: 303-830-1033
Email: acastro@fwlaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/23/2020 | 1 | COMPLAINT against United Specialty Insurance Company (Filing fee $ 400,Receipt Number 1082-7265163)Attorney Joseph Michael Feierabend added to party Ann C. Hoak(pty:pla), filed by Ann C. Hoak. (Attachments: # 1 Exhibit Ex. A - Certificate of Season Ski Pass Insurance, # 2 Exhibit Ex. B - Acknowledgement Letter, # 3 Exhibit Ex. C - Coverage Position)(Feierabend, Joseph) (Entered: 04/23/2020) |
| 04/23/2020 | 2 | Case assigned to Judge Christine M. Arguello and drawn to Magistrate Judge Kristen L. Mix. Text Only Entry. (trvo, ) (Entered: 04/24/2020) |
| 04/23/2020 | 3 | Magistrate Judge consent form issued pursuant to 28 U.S.C. 636(c). NO SUMMONS ISSUED. (trvo, ) (Entered: 04/24/2020) |
| 04/28/2020 | 4 | ORDER REFERRING CASE to Magistrate Judge Kristen L. Mix. Magistrate Judge Kristen L. Mix is designated to conduct NDISPO proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b). ALSO ORDERED that unless service has otherwise been completed or arranged, Plaintiff's counsel is directed to effect service of the summons and complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure **no later than July 27, 2020,** in order for the initial scheduling conference to be held promptly. The parties should expect to be given a firm trial setting that is 90 to 120 days from the date of the final pretrial conference, and should be available for trial accordingly. FURTHER, Court-sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. On the recommendation or informal request of the magistrate judge or on the request of the parties by motion, the Court may direct the parties to engage |

| | | |
|---|---|---|
| | | in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding. SO ORDERED by Judge Christine M. Arguello on 4/28/2020. Text Only Entry (cmalc2) (Entered: 04/28/2020) |
| 04/29/2020 | 5 | NOTICE of Entry of Appearance by Stephen Robert Miller on behalf of Ann C. HoakAttorney Stephen Robert Miller added to party Ann C. Hoak(pty:pla) (Miller, Stephen) (Entered: 04/29/2020) |
| 04/29/2020 | 6 | ORDER: This matter has its factual nexus in Eagle County. According to the Court's Revised Jury Plan for Random Jury Selection, this case is therefore properly designated for Jury Division 3. Because the jury will be drawn from that Division, it is appropriate that the case be managed, for pretrial purposes, by Magistrate Judge Gallagher in Grand Junction. Accordingly, pursuant to D.C. Colo. L. Civ. R. 40.1(a), and as approved by the Chief Judge of the Court, the undersigned directs that the Clerk of the Court reassign this action to Magistrate Judge Gallagher as the referral judge. All further pleadings in this case shall reflect the case number of 20-cv-01152-CMA-GPG. SO ORDERED by Judge Christine M. Arguello on 4/29/2020. Text Only Entry (cmalc2) (Entered: 04/29/2020) |
| 05/15/2020 | 7 | NOTICE of Entry of Appearance by Ethan Michael Lange on behalf of Ann C. HoakAttorney Ethan Michael Lange added to party Ann C. Hoak(pty:pla) (Lange, Ethan) (Entered: 05/15/2020) |
| 05/18/2020 | 8 | NOTICE of Filing Amended Pleading by Plaintiff Ann C. Hoak (Feierabend, Joseph) (Entered: 05/18/2020) |
| 05/18/2020 | 9 | AMENDED COMPLAINT against United Specialty Insurance Company, filed by Ann C. Hoak. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Feierabend, Joseph) (Modified on 5/19/2020 edited duplicate text)(evana, ). (Entered: 05/18/2020) |
| 05/18/2020 | 10 | SUMMONS REQUEST as to United Specialty Insurance Company re 9 Amended Complaint by Plaintiff Ann C. Hoak. (Feierabend, Joseph) (Entered: 05/18/2020) |
| 05/19/2020 | 11 | SUMMONS issued by Clerk. (Attachments: # 1 Magistrate Judge Consent Form) (evana, ) (Entered: 05/19/2020) |
| 05/19/2020 | 12 | NOTICE of Entry of Appearance by John J. Schirger on behalf of All Plaintiffs Attorney John J. Schirger added to party Sunit Anandwala(pty:pla), Attorney John J. Schirger added to party Ann C. Hoak(pty:pla), Attorney John J. Schirger added to party John Nevraumont(pty:pla) (Schirger, John) (Entered: 05/19/2020) |
| 05/19/2020 | 13 | NOTICE of Entry of Appearance by Matthew William Lytle on behalf of All Plaintiffs Attorney Matthew William Lytle added to party Sunit Anandwala(pty:pla), Attorney Matthew William Lytle added to party Ann C. Hoak(pty:pla), Attorney Matthew William Lytle added to party John Nevraumont(pty:pla) (Lytle, Matthew) (Entered: 05/19/2020) |
| 05/26/2020 | 14 | MOTION to Appoint Interim Class Counsel Pursuant to Rule 23(G) by Plaintiffs Sunit Anandwala, Ann C. Hoak, John Nevraumont. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order (PDF Only))(Stueve, Patrick) (Modified on 5/28/2020 edited the title of the text to reflect the title of the document filed)(evana, ). (Entered: 05/26/2020) |
| 05/27/2020 | 15 | SUMMONS Returned Executed by All Plaintiffs. United Specialty Insurance Company served on 5/19/2020, answer due 6/9/2020. (Feierabend, Joseph) (Entered: 05/27/2020) |
| 06/05/2020 | 16 | ORDER Denying Without Prejudice 14 Plaintiffs' Motion to Appoint Interim Class Counsel Pursuant to Rule 23(g), by Judge Christine M. Arguello on 6/5/2020.(evana, ) (Entered: 06/05/2020) |
| 06/09/2020 | 17 | STIPULATION for Extension of Time to Answer or Respond to the Complaint by |

Defendant United Specialty Insurance Company.. (Castro, Adrian) (Entered: 06/09/2020)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/16/2020 12:48:26 | | | |
| **PACER Login:** | dhpotts24:5556283:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-01152-CMA-GPG |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |