# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

Ronald Osborn, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Arch Insurance Company, and
Out of Towne, LLC, d/b/a Red Sky Travel Insurance,

Defendants.

Case No. _____

## CLASS ACTION COMPLAINT

## Jury Trial Demanded

## Introduction

1.      Defendants sell "Ski Pass Preserver" insurance to consumers.  This insurance covers the loss or interruption of season ski pass benefits.





**Policy Highlights**

Ski Pass Preserver offers the broadest limits:

- Reimbursement for the cost of a Season Pass less any refunds you received when you are unable to use your Season Pass due to a covered unforeseen reason.
- Reimbursement for the pro-rated cost of the Season Pass less any refunds you received when you are unable to use the remaining portion of your Season Pass due to a covered unforeseen reason.

https://redskyinsurance.com/products/ski-pass-preserver/

1

2.      In March, ski resorts throughout North America closed, in response to the COVID-19 pandemic and government stay-at-home or shelter-in-place orders.  Policyholders lost all season pass benefits for the rest of the ski season (about one-third of the season).

3.      Defendants have universally and unreasonably denied coverage for this loss of ski pass benefits.  Plaintiff brings this case on behalf of himself and similarly situated others, seeking just compensation for Ski Pass Preserver policyholders.

**Parties**

4.      Plaintiff Ronald Osborn is domiciled in Riverside, California.

5.      The proposed class includes all individuals nationwide who purchased Ski Pass Preserver insurance for the 2019-2020 ski season.  The proposed class includes individuals domiciled in a number of different states.

6.      Defendant Arch Insurance Company (d/b/a Arch Insurance Solutions) ("Arch") is a Missouri corporation.  As listed in the Sky Pass Preserver policy, its principal place of business is 300 Plaza Three Jersey City, New Jersey, 07311.

7.      Defendant Red Sky Travel Insurance ("Red Sky") is an assumed name for Out of Towne, LLC.  Out of Towne, LLC is a Virginia LLC.  The Virginia Secretary of State website lists Laird Sager as Manager.  The Red Sky website lists a mailing address in Kitty Hawk, North Carolina and lists a North Carolina contact number for Mr. Sager.  Mr. Sager's Linkedin profile identifies him as the "Founder/President" of Red Sky and lists his location as Kitty Hawk, North Carolina. Based on this information, Plaintiff believes that Mr. Sager is the Member of Red Sky and that he is a citizen of North Carolina (domiciled in North Carolina).

**Jurisdiction and Venue**

8.      This Court has jurisdiction under 28 U.S.C. § 1332(d)(2)(A).  This matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which one or more members of the proposed class are citizens of a state different from any one of the Defendants.

9.      Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.  As alleged above, Arch has offices in New Jersey.  Arch and Red Sky market and sell Ski Pass Preserver policies to New Jersey residents.

**Facts**

10.      Plaintiff's Ski Pass Preserver policy is attached as Exhibit A.

11.      The policy language and relevant coverage is materially similar for each class member.

12.      Plaintiff paid for his policy when he purchased an Ikon season ski pass from www.ikonpass.com.  Plaintiff paid a $37.14 premium.

13.      Each class member paid his or her full premium, either through the purchase of an Ikon season ski pass, the purchase of another ski pass, or other means.

14.      In exchange for this premium, Defendants provided Plaintiff and each class member with the coverage described in the policy.

15.      Both Red Sky and Arch are direct parties to the policy with plaintiff and each class member.  The policy states that it is underwritten by Arch Insurance Company and that claims are administered by "Red Sky Travel Insurance c/o Arch Insurance Company."   In the alternative, Red Sky is the agent of Arch and Arch is the party to the policy.

3

 

**SKI PASS PRESERVER**

**Underwritten By:**
**Arch Insurance Company**
Administrative Office: 300 Plaza Three
Jersey City, NJ 07311

**Administered By:**
**Red Sky Travel Insurance**
c/o Arch Insurance Company
Executive Plaza IV
11350 McCormick Rd., Suite 102
Hunt Valley, MD 21031
Phone: 1-866-889-7409
Fax: 1-443-279-2901
Email: redsky@archinsurance.com
Office Hours: Monday-Friday, 8:30am – 5pm EST

16.     Coverage decisions are made by Arch and adopted by Red Sky or, in the

alternative, made jointly by Red Sky and Arch.  Claims decisions come from an Arch Insurance

Company email address (redsky@archinsurance.com).  Claim denial letters state that "Red Sky

Claims are administered by Arch Insurance Company" and bear the logo of "Arch Insurance

Solutions" (a trade name for Arch Insurance Company).  The listed address for the "Red Sky

Claims" department is an Arch Insurance Company address (11350 McCormick Road, Suite 102

Hunt Valley, MD 21031 USA).  The Red Sky website for filing claims has the logo "Powered by

Arch Insurance Solutions."

17.     In March of 2020, to prevent the spread of COVID-19, state and local

governments issued stay-at-home or shelter-in-place orders.  Ski resorts throughout North

America (including all Ikon season pass resorts) closed, with no plans to reopen.  The resorts

closed well before the end of the ski season.  For example, the season at Winter Park typically

runs into late April or May or later.  The season at Mammoth Mountain, California typically runs

into June or July or later.

18.     The Ski Pass Preserver policy provides coverage if policyholders are

"quarantined." The term "quarantine" is not a defined term.   In this situation, this term must be

4

construed against the insurer and in favor of coverage.  The meaning of "quarantine" encompasses government shelter-in-place or stay-at-home orders and resort closures designed to prevent the spread of the COVID-19 pandemic.  Accordingly, the policy language compels coverage.

19.     In addition, the policy provides coverage if a policyholders' "primary place of residence or destination is made Uninhabitable."  "Unhabitable" includes "immediate safety hazards have yet to be cleared" or "under an order of mandatory evacuation by local government authorities." The spread of COVID-19 posed an immediate safety hazard at both Plaintiff's and class members' primary residence or ski destination and this hazard has not been cleared.  In addition, ski resorts ordered closed by state or local governments were "under an order of mandatory evacuation."  This compels coverage for the resulting loss of season pass benefits.

20.     Under the policy, Plaintiff and class members are entitled to reimbursement of the "pro-rated cost of the remaining portion of the Covered Season Pass purchased."

21.     Plaintiff filed a claim and proof of loss, through the Red Sky online claims portal, on April 27, 2020.  Exhibit B.  That same day he received email confirmation from Red Sky that it had received his claim.

22.     On May 11, 2020, Plaintiff received a letter from Defendants denying his claim. The letter contended, in part:

> There are no benefits under a travel insurance policy for shelter-in-place or stay-at-home orders issued as they are not quarantines as defined by the CDC. These orders are intended to reduce harm from the spread of coronavirus in a community.  Unlike quarantines, there are many exceptions provided under these orders that permit one to leave their homes for essential activities including but not limited to, seeing a doctor for medical care, grocery shopping, pick up carry out orders from restaurants, to bike or run, so long as social distancing is practiced.

23.     The letter cited a purported CDC definition of quarantine that does not apply unless a policyholder is forbidden from leaving their home, under any circumstances.  There is

no such CDC definition in the policy. And as Defendants knew, an undefined term must be construed in favor of coverage.

24.     Defendants were aware that coverage was compelled by the "quarantine" provision. In the alternative, Defendants were willfully blind to this fact. In the alternative, Defendants recklessly disregarded a high risk that coverage was required.

25.     Defendants were aware that coverage was additionally compelled by the "Unhabitable" provision. In the alternative, Defendants were willfully blind to this fact. In the alternative, Defendants recklessly disregarded a high risk that this provision compelled coverage.

26.     Defendants have universally denied claims caused by stay-at-home or shelter-in-place orders and the closure of ski resorts. It is public knowledge that Defendants are denying claims, for example, in complaints to the Better Business Bureau, newspaper articles, and posts on popular internet forums like Reddit.

27.     Defendants have been dissuading policyholders from filing claims by informing policyholders who contact Defendants that claims caused by resort closures, stay-at-home orders, or shelter-in-place orders are not covered. In addition, at the direction of Defendants, or based on Defendants' statements, Ikon Pass representatives have been telling Ikon Pass holders that insurance will not cover such claims.

**Class Action Allegations**

28.     Plaintiffs bring this action on behalf of the proposed class of: all individuals nationwide who purchased Ski Pass Preserver insurance for the 2019-2020 ski season.

29.     The following people are excluded from the class: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its

parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity.**

30.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  For example, Ski Pass Preserver insurance was offered together with Ikon Pass season ski passes (offered by Alterra Mountain Company).  Alterra Mountain Company has projected that it sold over 250,000 Ikon passes for the 2019-2020 season.  This means that, conservatively, there are tens of thousands of policyholders.  In addition, there are policyholders who purchased Ski Pass Preserver insurance independently of Ikon Pass.

**Commonality.**

31. There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

    i.   The terms of the contract formed between class members and Defendants;

    ii.  Whether Defendants breached this contract by failing to provide coverage;

    iii. Damages needed to reasonably compensate class members;

    iv.  Whether Defendants acted in bad faith by denying coverage.

**Typicality.**

32.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Ski Pass Preserver insurance.  Like the proposed class, Plaintiff lost his ski

7

pass benefits due to resort closures and stay-at-home orders. Plaintiff alleges the same breach, and other claims, as the proposed class. Plaintiff seeks the same type of relief.

**Adequacy.**

33.     Plaintiff will fairly and adequately protect the interests of the proposed class. Plaintiff's interests are aligned with the interests of the proposed class members: Plaintiff seeks damages for Defendants' breach and other alleged wrongs. Plaintiff is represented by experienced class counsel who are prepared to vigorously litigate this case through judgment and appeal. There are no conflicts of interest between Plaintiff and the class.

**Predominance and Superiority.**

34.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that breach of the same insurance policy is found for some proposed class members, but not others, or that bad faith is found for some coverage decisions, but not other identical decisions.

35.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, core liability questions are common: whether Defendants breached their contract with class members by denying coverage and whether Defendants denied coverage in bad faith.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to litigate class members' individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

8

37. The proposed class is readily ascertainable. The number and identity of class members can be determined with specificity from Defendants' sales and policyholder records.

## Claims

### Claim 1: Breach of contract

38. Plaintiff alleges this claim individually and on behalf of the proposed class.

39. Plaintiff incorporates the allegations in paragraphs 1 - 37 above.

40. Defendants entered into a contract with Plaintiff, and each class member, to provide insurance coverage for the loss of ski season pass benefits.

41. Plaintiff and each class member have paid the full premium and performed all contractual obligations.

42. Defendants breached the contract by denying coverage for the loss of season pass benefits due to COVID-19 related stay-at-home or shelter-in-place orders and the closure of resorts.

43. Defendants' breach was the proximate cause of, and a substantial factor in, causing loss and damages to Plaintiff and each class member.

### Claim 2: Breach of the implied covenant of good faith and fair dealing

44. Plaintiff alleges this claim individually and on behalf of the proposed class.

45. Plaintiff incorporates the allegations in paragraphs 1 - 37 above.

46. Defendants had an implied duty of good faith and fair dealing associated with the policy.

47. Defendants breached this duty by unreasonably applying a narrow definition of "quarantine" so as to deprive Plaintiff and each class member of policy benefits.

48.     Defendants breached this duty by unreasonably failing to consider and recognize coverage under the "Uninhabitable" provision, so as to deprive Plaintiff and each class member of policy benefits.

49.      Defendants breached this duty by unreasonably failing to search for evidence of coverage, so as to deprive Plaintiff and each class member of policy benefits.

50.     Defendants breach was the proximate cause of, and a substantial factor in, causing losses and damages to Plaintiff and each class member.

### Claim 3: Bad Faith

51.     Plaintiff alleges this claim individually and on behalf of the proposed class.

52.     Plaintiff incorporates the allegations in paragraphs 1 - 37 above.

53.     Defendants' coverage decision was not fairly debatable.  Defendants either knew that they had no reasonable basis to deny coverage, were willfully blind to this fact, or recklessly disregarded the lack of a reasonable basis to deny coverage.

54.     Defendants' bad faith was the proximate cause of, and a substantial factor in, causing losses and damages to Plaintiff and each class member.

55.     Defendants' conduct was wantonly reckless or malicious.  Defendants denied claims knowing that the claim should be covered.  In the alternative, Defendants remained willfully blind to coverage.  In the alternative, Defendants recklessly disregarded a high probability that claims were covered.

### Claim 4: Unjust enrichment

56.     Plaintiff alleges this claim individually and on behalf of the proposed class.

57.     Plaintiff incorporates the allegations in paragraphs 1 – 37 above.

10

58.     Defendants received a benefit (premiums) at Plaintiff's and each class member's expense.

59.     It would be unjust for Defendants to retain full premiums while wrongly denying coverage under the policy.

60.     In addition, it would unjust for Defendants to retain full premiums given that ski resorts closed long before the end of the ski season, relieving Defendants from the risk of covering any other claims under the policy (e.g., the loss of pass benefits due to injury).

61.     Defendants unjust conduct was the proximate cause of, and a substantial factor in, causing losses and damages to Plaintiff and each class member.

## Jury Demand

Plaintiffs demand a jury trial on all issues so triable.

## Prayer for Relief

Plaintiff seeks the following relief for himself and for the proposed class:

a)  An order certifying the asserted claims, or issues raised, as a class action;

b)  An order declaring that class members are covered for the loss of their ski passes;

c)  An injunction requiring Defendants to inform class members that they are covered for the loss of their ski passes;

d)  A judgment in favor of Plaintiff and the proposed class;

e)  Compensatory damages;

f)  Punitive damages;

g)  Restitution;

h)  Rescission;

i)  Disgorgement, and other just equitable relief;

j)  Pre- and post-judgment interest;

k)  Reasonable attorneys' fees and costs;

l) Any additional relief that the Court deems reasonable and just.

Dated: May 26, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  ___/s/ Andrew Obergfell____
        Andrew Obergfell

Andrew Obergfell
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aobergfell@bursor.com

**BURSOR & FISHER, P.A.**
Yeremey Krivoshey (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ykrivoshey@bursor.com

**DOVEL & LUNER, LLP**
Jonas Jacobson (*pro hac vice* forthcoming)
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066
Fax: 310-656-7069
E-mail: jonas@dovel.com

*Counsel for Plaintiff*

# Exhibit A

 

**SKI PASS PRESERVER**

**Underwritten By:**
**Arch Insurance Company**
Administrative Office: 300 Plaza Three
Jersey City, NJ 07311

**Administered By:**
**Red Sky Travel Insurance**
c/o Arch Insurance Company
Executive Plaza IV
11350 McCormick Rd., Suite 102
Hunt Valley, MD 21031
Phone: 1-866-889-7409
Fax: 1-443-279-2901
Email: redsky@archinsurance.com
Office Hours: Monday-Friday, 8:30am – 5pm EST

**INDIVIDUAL TRAVEL PROTECTION POLICY**

This policy describes the travel insurance benefits underwritten by Arch Insurance Company, herein referred to as the "Company" or as "We", "Us" and "Our". Please refer to the Schedule of Benefits shown on the Schedule of Benefits, which provides the Insured, also referred to as "You" or "Your", with specific information about the program You purchased.

If You are not satisfied for any reason, You may return Your policy to Us within 14 days after receipt. Your premium will be refunded, provided You have not already departed on the Trip or filed a claim. When so returned, all coverages under the policy are void from the beginning.

**TABLE OF CONTENTS**

SCHEDULE OF BENEFITS
SECTION I - COVERAGES
SECTION II - DEFINITIONS
SECTION III - POLICY LIMITATIONS AND EXCLUSIONS
SECTION IV - COVERAGE PROVISIONS
SECTION V - CLAIMS PROVISIONS
SECTION VI - GENERAL PROVISIONS

IN WITNESS WHEREOF, The **Company** has caused this policy to be executed and attested.

_____          _____
John Mentz                                             Patrick Nails
President                                                  Secretary

05 LTP0041 00 06 13                                                                              Page 1 of 7

### SCHEDULE OF BENEFITS

| **Benefits** | **Maximum Benefit Amount** |
| --- | --- |
| Season Pass Cancellation | Season Pass Cost |
| Season Pass Interruption | Pro-rated Season Pass Cost |

## SECTION I – COVERAGES

No benefit will duplicate any other benefit or coverage provided under this policy. Should there be a duplication of coverage or benefits, then We will pay the benefit providing the largest amount of coverage.

**SEASON PASS CANCELLATION**
We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for the cost of the Covered Season Pass, less any refunds received, which You purchased for the Season Pass Coverage Period, when You cancel the Season Pass prior to the start of the Season Pass Coverage Period for one of the following Unforeseen reasons:

1. Your or a Family Member's death, that occurs before the Season Pass Coverage Period;
2. Your or a Family Member's, covered Sickness or Injury, that: a) occurs before the Season Pass Coverage Period; b) requires Medical Treatment at the time of cancellation; and c) as certified by a Physician, results in medical restrictions so disabling as to cause the Season Pass to be cancelled; or
3. for Other Covered Events;

provided that any such covered Unforeseen reason occur while coverage is in effect for You.

**SEASON PASS INTERRUPTION**
We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for the pro-rated cost of the remaining portion of the Covered Season Pass purchased, less any refunds received, which You purchased for the Season Pass Coverage Period, when You cancel the Season Pass for one of the following Unforeseen reasons:

1. Your or a Family Member's death, which occurs during the Season Pass Period;
2. Your or a Family Member's, covered Sickness or Injury which: a) occurs during the Season Pass Coverage Period, b) requires Medical Treatment at the time of interruption; and c) as certified by a Physician, results in medical restrictions so disabling as to prevent Your continued use of the Season Pass; or
3. for Other Covered Events;

provided that any such covered Unforeseen reason occurs while coverage is in effect for You.

Reimbursement will be calculated based on the first day of the Season Pass Coverage Period, regardless of the actual date the Season Pass was purchased.

**SPECIAL CONDITIONS:** You must advise the Travel Supplier and Red Sky Travel Insurance as soon as possible in the event of a claim. We will not pay benefits for any additional charges incurred that would not have been charged had You notified the Travel Supplier and Red Sky Travel Insurance as soon as reasonably possible.

In no event shall the amount reimbursed for Season Pass Cancellation and Season Pass Interruption exceed the lesser of the amount You prepaid for the Season Pass or the Maximum Benefit Amount shown in the Schedule of Benefits.

**"Other Covered Events"** means:

a. You being hijacked, quarantined, required to serve on a jury (notice of jury duty must be received after Your Effective Date), served with a court order to appear as a witness in a legal action in which You are not a party (except law enforcement officers);

b. Your primary place of residence or destination is made Uninhabitable and remains Uninhabitable during the Season Pass Coverage Period, by fire, flood, or other Natural Disaster, vandalism, or burglary of Your principal place of residence;

c. Your transfer of employment of 100 miles or more by the employer with whom You or Your are employed on Your Effective Date which requires Your principal residence to be relocated;

d. You who are military, police or fire personnel being called into emergency service to provide aid or relief;

e. Your involuntary employment termination or layoff which occurs 30 days or more after Your Effective Date. Employment must have been with the same employer for at least 1 continuous year;

f. revocation of Your previously granted military leave or re-assignment. Official written notice of the revocation or re-assignment by a supervisor or commanding officer of the appropriate branch of service will be required;

g. Your pregnancy, provided the pregnancy occurs after Your Effective Date for Season Pass Cancellation, as verified by medical records; and

h. You are attending the childbirth of Your Family Member, provided the pregnancy occurs after Your Effective Date for Season Pass Cancellation, as verified by medical records.

## SECTION II – DEFINITIONS

**"Accident"** means a sudden, unexpected, unusual, specific event that occurs at an identifiable time and place, and shall also include exposure resulting from a mishap Skiing.

**"Bankruptcy or Default"** means the total cessation of operations due to financial insolvency, with or without the filing of a bankruptcy.

**"Caregiver"** means an individual employed for the purpose of providing assistance with activities of daily living to You or to Your Family Member who has a physical or mental impairment. The Caregiver must be employed by You or Your Family Member. A Caregiver is not a babysitter; childcare service, facility or provider; or a person employed by any service, provider or facility to supply assisted living or skilled nursing personnel.

**"Child Caregiver"** means an individual providing basic childcare service needs for Your minor children under the age of 18 while You are Skiing with a Covered Season Pass without the minor children. The arrangement of being the Child Caregiver while You are Skiing with a Covered Season Pass must be made 30 or more days prior to the Season Pass Coverage Period.

**"Domestic Partner"** means an opposite or same-sex partner who is at least eighteen (18) years of age and has met all the following requirements for at least 6 months:

1) Resides with You;

2) Shares financial assets and obligations with You;

3) Is not related by blood to You to a degree of closeness that would prohibit a legal marriage;

4) Neither You nor Your Domestic Partner is married to anyone else, or has any other Domestic Partner.

**"Effective Date"** means the date and time Your coverage begins, as indicated in Section IV - Coverage Provisions, When Coverage Begins and Ends.

**"Family Member"** means any of the following: Your legal spouse (or common-law spouse where legal), legal guardian or ward, son or daughter (adopted, foster, step or in-law), brother or sister (includes step or in-law), parent (includes step or in-law), grandparent (includes in-law), grandchild, aunt, uncle, niece or nephew, Domestic Partner, Caregiver, or Child Caregiver.

**"Hospitalized"** means admitted to a hospital for a period of at least 24 hours or where the patient is charged by the hospital for a minimum of one day of inpatient charges.

**"Injury"** means bodily harm caused by an Accident that: 1) occurs while Your coverage is in effect under the policy and 2) requires examination and treatment by a Physician. The Injury must be the direct cause of loss and must be independent of all other causes and must not be caused by, or result from, Sickness.

**"Insured"** means the person named on the Schedule of Benefits or Confirmation of Benefits that: is scheduled to Ski during the Season Pass Coverage Period, provided the required premium has been paid. Insured also means "You" and "Your".

**"Maximum Benefit Amount"** means the maximum amount payable for coverage provided to You as shown in the Schedule of Benefits.

**"Medical Treatment"** means examination and treatment by a Physician.

**"Natural Disaster"** means earthquake, flood, fire, hurricane, blizzard, avalanche, tornado, tsunami, volcanic eruption, or landslide that is due to natural causes.

**"Physician"** means a person licensed as a medical doctor in the jurisdiction where the services are rendered or a Christian Science Practitioner who is: (a) other than You or a Family Member; and (b) practicing within the scope of his or her license.

**"Pre-Existing Condition"** means an illness, disease, or other condition during the 60 day period immediately prior to the Effective Date of Your coverage for which You or Your Family Member: 1) received or received a recommendation for a test, examination, or medical treatment; or 2) took or received a prescription for drugs or medicine. Item (2) of this definition does not apply to a condition which is treated or controlled solely through the taking of prescription drugs or medicine and remains

treated or controlled without any adjustment or change in the required prescription throughout the 60 day period before Your coverage is effective under this policy.

**"Season Pass" or "Covered Season Pass"** means Your Trails access pass to Ski for multiple days which you have purchased, and for which Season Pass Cancellation coverage or Season Pass Interruption coverage has been elected and premium paid.

**"Season Pass Coverage Period"** means the period of time for which Season Pass Cancellation or Season Pass Interruption coverage is elected and the premium paid and for which a Season Pass has been purchased.

**"Sickness"** means an illness or disease of the body that: 1) requires examination and treatment by a Physician, and 2) commences while Your coverage is in effect. An illness or disease of the body that first manifests itself and then worsens or becomes acute prior to the Effective Date of Your coverage is not a Sickness as defined herein and is not covered by the policy.

**"Ski" or "Skiing"** means winter recreation of snow skiing or snowboarding on Trails which are only accessed by a prepaid use ticket for lifts and/or use or admission, but does not include cross country skiing, back country skiing, heli-skiing, extreme skiing, snowcat skiing, ski-jumping, off-piste skiing, tubing, luging, half-pipes, terrain parks, or other snow play activities either on or off Trails.

**"Trails"** means named skier paths designated for downhill travel as shown on a ski resort trail map using the international difficulty rating, not including connecting paths or cross-overs between downhill trails, trails that are outside the established marked and patrolled boundaries of a ski resort, or areas designated as unsafe or closed by ski resort management for avalanche control work.

**"Travel Supplier"** means any entity or organization that coordinates or supplies the Season Pass for You.

**"Unforeseen"** means not anticipated or expected and occurring after Your purchase of the **Season Pass Cancellation** and the **Season Pass Interruption** coverage.

**"Uninhabitable"** means: (1) the building structure itself is unstable and there is a risk of collapse in whole or in part; (2) there is exterior or structural damage allowing elemental intrusion, such as rain, wind, hail or flood; (3) immediate safety hazards have yet to be cleared; or (4) the property is without electricity, gas, sewer service or water or under an order of mandatory evacuation by local government authorities.

## SECTION III - POLICY LIMITATIONS AND EXCLUSIONS

**Benefits are not payable for any loss due to, arising or resulting from:**

1. due to a Pre-Existing Condition;

2. suicide, attempted suicide or any intentionally self-inflicted injury of You, or Family Member;

3. war, invasion, acts of foreign enemies, hostilities between nations (whether declared or undeclared), or civil war;

4. participating as a professional in a stunt, athletic or sporting event or competition;

5. normal pregnancy (except complications of pregnancy) and/or resulting childbirth, except as otherwise covered under Cancellation or Interruption, or voluntarily induced abortion;

6. any non-emergent treatment or surgery, or any Elective Treatment and Procedures;

7. a mental, or nervous or psychological disorder unless Hospitalized for that condition while the policy is in effect for You; or

8. Bankruptcy or Default or failure to supply services by a Travel Supplier.

## SECTION IV - COVERAGE PROVISIONS

**Who Is Eligible For Coverage**
A person who has purchased the Covered Season Pass during the Season Pass Coverage Period.

**When Coverage Begins and Ends**

**When Coverage Begins:**

**Season Pass Cancellation** Coverage begins when the coverage is elected and the required premium for the Season Pass Coverage Period is received by the Travel Supplier or Arch Insurance Company.

This is Your "Effective Date" and time for **Season Pass Cancellation**.

**Season Pass Interruption:** Coverage begins at the start of the Season Pass Coverage Period. This is Your "Effective Date" and time for **Season Pass Interruption**.

**When Coverage Ends:**

**Season Pass Cancellation:** Your coverage automatically ends on the earlier of 1) the start of the Season Pass Coverage Period; or 2) the date and time You cancel the Season Pass prior to the start of the Season Pass Coverage Period.

**Season Pass Interruption:** Your coverage automatically ends on the earlier of 1) the end of the Season Pass Coverage Period; or 2) the date and time You cancel the Season Pass.

Termination of **Season Pass Cancellation** and **Season Pass Interruption** coverage will not affect a claim for loss that occurs after premium has been paid.

## SECTION V - CLAIMS PROVISIONS

**Your duties in event of a loss:**

Immediately, or as soon as possible, call Your Travel Supplier and Red Sky Travel Insurance (see Where to Report a Claim) to report Your cancellation or interruption to avoid non-covered charges due to late reporting.

If You are prevented from using the Covered Season Pass as scheduled or must interrupt the Season Pass Coverage Period due to Sickness or Injury, You should obtain medical care immediately. We require a certification by the treating Physician at the time of Sickness or Injury that medically imposed restrictions prevented Your use or continued use of the Covered Season Pass.

**Where to Report a Claim:**

Phone: 866-889-7409
Email: redsky@archinsurance.com
Mail: Red Sky Travel Insurance c/o Arch Insurance Company
Executive Plaza IV
11350 McCormick Rd., Suite 102
Hunt Valley, MD 21031

**Notice of Claim**:  Notice of claim must be reported to Us within 30 days after a loss occurs or as soon as is reasonably possible.  You or someone on Your behalf may give the notice. The notice should be given to Us or Our designated representative and should include sufficient information to identify You.

**Claim Forms**:  When notice of claim is received by Us or Our designated representative, Red Sky Travel Insurance forms for filing proof of loss will be furnished.  If these forms are not sent within 15 days, the proof of loss requirements can be met by You sending Us a written statement of what happened.   This statement must be received within the time given for filing proof of loss.

Obtain claim forms from Red Sky Travel Insurance or at tripreserver.com which will provide all the details for filing Your claim appropriately. Please read the instructions carefully. The instructions will direct You toward filing all the correct, necessary documentation and following the appropriate procedures in order to have Your claim settled as quickly as possible.

**Proof of Loss**: Proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible.  Proof must, however, be furnished no later than 12 months from the time it is otherwise required, except in the absence of legal capacity.

**Payment of Claims**: All benefits will be paid directly to You, unless otherwise directed.  Any accrued benefits unpaid at Your death will be paid to Your estate.  If You have assigned Your benefits, we will honor the assignment if a signed copy has been filed with us.  We are not responsible for the validity of any assignment.

## SECTION VI - GENERAL PROVISIONS

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss.  No legal action for a claim can be brought against Us more than 3 years after the time required for giving proof of loss.  This 3 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

**Concealment and Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented.

**Other Insurance with Us:** You may be covered under only one travel insurance policy with Us while You are Skiing under a Covered Season Pass. If You are covered under more than one such policy, You may select the coverage that is to remain in effect. In the event of death, the selection will be made by Your beneficiary or estate. Premiums paid (less claims paid) will be refunded for the duplicate coverage that does not remain in effect.

**Reductions in the Amount of Insurance:** The applicable benefit amount will be reduced by the amount of benefits, if any, previously paid for any loss or damage under this coverage while You are Skiing under a Covered Season Pass.

 

**State Exceptions for
Ski Pass Preserver Policy**

**Alabama Residents
Form #:** 05 LTP0041 01 11 13

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** The time period by which a legal action relating to this policy must be filed is governed by Alabama law.

**Arkansas Residents
Form #:** 05 LTP0041 04 10 13

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 5 years after the time required for giving proof of loss. This 5 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

**California Residents
Form #:** 05 LTP0041 05 04 14

Under **Section II - Definitions,** the following definitions are deleted and replaced as follows:

"**Domestic Partner**" means an opposite or same-sex partner who is at least eighteen (18) years of age and qualifies as a Domestic Partner under state law.

"**Injury**" means bodily harm caused by an Accident that: 1) occurs while Your coverage is in effect under the policy: and 2) requires examination and treatment by a Physician. The Injury must be the proximate cause of loss and must not be caused by, or result from, Sickness.

Under **Section V - Claims Provisions,** the **Proof of Loss** provision is deleted and replaced as follows:

**Proof of Loss:** Proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

Under **Section V – Claims Provisions,** the following will appear as the 1st paragraph in the **Payment of Claims** provision:

Benefits payable under this policy will be paid immediately upon receipt of due written proof of loss.

Under **Section V – Claims Provisions,** the following will appear as the last paragraph in the **Payment of Claims** provision:

Unless the Insured makes an irrevocable designation of beneficiary, the right to change of beneficiary is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this policy or to any change of beneficiary or beneficiaries, or to any other changes in this policy.

Under **Section VI – General Provisions,** the following will appear as the 1st provision:

**Entire Contract, Changes:** This policy, including the Schedule of Benefits or Confirmation of Benefits, endorsements and attached papers, if any, constitute the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

Under **SECTION VI – General Provisions,** the **Concealment and Misrepresentation** provision is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has

been intentionally concealed or misrepresented.

**District of Columbia Residents
Form #:** 05 LTP0041 09 07 13

Under **Section II – Definitions, Domestic Partner** is deleted and replaced as follows:

"**Domestic Partner**" means an opposite or same-sex partner who is at least eighteen (18) years of age and is registered with a state or local registry. If not registered, all the following requirements for at least 6 months:
1.  Resides with You;
2.  Shares financial assets and obligations with You;
3.  Is not related by blood to You to a degree of closeness that would prohibit a legal marriage;
4.  Neither You nor Your Domestic Partner is married to anyone else, or has any other Domestic Partner.

Under **Section II – Definitions, Medically Necessary** is deleted and replaced as follows:

"**Medically Necessary**" means a service which is appropriate and consistent with the treatment of the condition in accordance with accepted standards of community practice. The fact that a Physician may prescribe, authorize, or direct a service does not of itself make it Medically Necessary or covered by the policy.

**Georgia Residents
Form #:** 05 LTP0041 11 06 13

Under **Section I – Coverages,** the following "**Other Covered Event**" is deleted and replaced as follows**:**

d. You who are military, police or fire personnel and purchased coverage at the time the Payments or Deposits were made for the Trip, are called into emergency service to provide aid or relief;

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be cancelled, if before, during or after a loss, any material fact or circumstance relating to this

Edition 5/16

insurance has been concealed or misrepresented.

**Illinois Residents**
**Form #:** 05 LTP0041 14 10 13

Under **Section II – Definitions, Ski Equipment** is deleted in its entirety:

**"Ski Equipment"** means skis, ski poles, ski bindings, ski boots, snowboards, snowboard bindings, snowboard boots, snowblades and any other recognized snow sports equipment.

Under **Section II – Definitions, Family Member** is deleted and replaced as follows:

**"Family Member"** means any of the following: Your or Your Traveling Companion's legal spouse (or common-law or civil union spouse where legal), legal guardian or ward, son or daughter (adopted, foster, step, in-law or civil union), brother or sister (includes step or in-law), parent (includes step or in-law), grandparent (includes in-law), grandchild, aunt, uncle, niece or nephew, Domestic Partner, Caregiver, or Child Caregiver.

Under **Section II – Definitions, Injury** is deleted and replaced as follows:

"**Injury**" means bodily harm caused by an Accident that: 1) occurs while Your coverage is in effect under the policy; and 2) requires examination and treatment by a Physician. The Injury must be the direct cause of loss and must be independent of disease or bodily infirmity.

Under **Section II – Definitions, Uninhabitable** is deleted and replaced as follows:

**"Uninhabitable"** means: (1) the building structure or any part of the building structure is unstable and there is a risk of collapse; (2) there is exterior or structural damage allowing elemental intrusion, such as rain, wind, hail or flood; (3) immediate safety hazards have yet to be cleared; or (4) the property is without electricity, gas, sewer service or water or under an order of mandatory evacuation by local government authorities.

Under **Section III, Policy Limitations and Exclusions,** the following exclusions are deleted in their entirety:

2. suicide, attempted suicide or any intentionally self-inflicted injury of You, a Traveling Companion, Family Member or Business Partner booked to travel with You, while sane or insane;
4. participating as a professional in a stunt, athletic or sporting event or competition;

Under **Section III, Policy Limitations and Exclusions,** the following exclusions are revised to appear as follows:

3. war (whether declared or undeclared), acts of foreign enemies, hostilities between nations not including a Terrorist Incident, or civil war;

Under **Section V, Claims Provisions**, the following provision is added:

**Time of Payment of Claims:** All claims and indemnities payable under the terms of a policy of accident and health insurance shall be paid within 30 days following receipt of due proof of loss. Failure to pay within such period shall entitle the insured to interest at the rate of 9 percent per annum from the 30th day after receipt of such proof of loss to the date of late payment, provided that interest amounting to less than one dollar need not be paid.

Under **Section VI, General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 3 years after the time required for giving proof of loss. This 3 year time period is extended from the date proof of loss is filed and the date the whole claim or any part of the claim is denied.

Under **Section VI, General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Intentional Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or intentionally misrepresented.

Under **Section VI, General Provisions,** the following provisions must be added:

**Time Limit on Certain Defenses:** After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability commencing after the expiration of such two year period.

**Change of Beneficiary:** You have the right to change Your beneficiary and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this policy or to any change of beneficiary or beneficiaries, or to any other changes in this policy.

**Civil Union:** Parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the laws of Illinois to spouses.

**Kansas Residents**
**Form #:** 05 LTP0041 17 12 13

The following disclaimer has been added to page 1 the policy:

**THIS IS A LIMITED POLICY.**
**PLEASE READ IT CAREFULLY**
**THIS POLICY DOES NOT COVER PRE-EXISTING CONDITIONS**
**UNLESS THE PRE-EXISTING CONDITIONS WAIVER IS APPLICABLE**

The "Free Look Period" shown on page 1 is deleted and replaced as follows:

**If You are not satisfied for any reason, You may return Your policy to Us within 14 days after receipt. Your premium will be refunded, provided You have not already departed on the Trip or filed a claim. When so returned, all coverages under the policy are void from the beginning.**

Under **Section II – Definitions,** the definition of **"Domestic Partner"** and any references contained in the policy are deleted in its entirety.

The following provision has been added after **Section IV – Coverage Provisions, When Coverage Ends:**

**Cancellation by Insured**: You may cancel this policy at any time by written notice delivered or mailed to Us, effective upon receipt of such notice or on such later date as may be specified in such notice. In the event of cancellation or death of the insured, We will promptly return the unearned portion of any premium paid on a short rate basis. Cancellation will be without prejudice to any claim originating prior to the effective date of the cancellation.

Under **Section V – Claims Provisions**, **Payment of Claims** is deleted and replaced as follows:

**Payment of Claims**: We, or Our designated representative, will pay the claim immediately upon receipt of due written acceptable proof of loss. Benefits for Loss of life will be paid to Your designated beneficiary. If a beneficiary is not otherwise designated by You, benefits for Loss of life will be paid to the first of the following surviving preference beneficiaries:

a) Your spouse;
b) Your child or children jointly;
c) Your parents jointly if both are living or the surviving parent if only one survives;
d) Your brothers and sisters jointly; or
e) Your estate.

All other benefits will be paid directly to You, unless otherwise directed. Any accrued benefits unpaid at Your death will be paid to Your estate. If You have assigned Your benefits, we will honor the assignment if a signed copy has been filed with us. We are not responsible for the validity of any assignment.

All or a portion of all benefits provided by the policy may, at Our option, be paid directly to the provider of the service(s) to You. All benefits not paid to the provider will be paid to You.

If any benefit is payable to: (a) an Insured who is a minor or otherwise not able to give a valid release; or (b) Your estate, We may pay any amount due under the policy to Your beneficiary or any relative whom We find

entitled to the payment. Any payment made in good faith shall fully discharge Us to any party to the extent of such payment.

Under **Section VI – General Provisions**, **Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 5 years after the time required for giving proof of loss. This 5 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

Under **Section VI – General Provisions**, **Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented. For the purposes of this provision, fraud means knowingly and with intent to defraud, You present, cause to be presented or prepare with knowledge or believe to an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy, or a claim for payment or other benefit pursuant to an insurance policy which You know to contain materially false information concerning any fact material thereto; or You conceal, for the purpose of misleading, information concerning any fact material thereto.

**Louisiana Residents**
**Form #:** 05 LTP0041 19 11 13

Under **Section II – Definitions, "Domestic Partner"** is deleted in its entirety.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss**: Proof of loss must be provided within 90 days after the date of

the loss or as soon as is reasonably possible. Proof must, however, be furnished no later than 12 months from the time it is otherwise required, except in the absence of legal capacity. For losses that arise due to a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials, the time limit for submission of proof of loss is 180 days after the date of the loss.

Under **Section V – Claims Provisions, Payment of Claims** the following provision has been added:

We will pay the claim within 30 days after receipt of acceptable proof of loss.

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been intentionally concealed or misrepresented. Fraud or misrepresentation with the intent to deceive after coverage is in force is grounds for cancellation and grounds to deny coverage for benefits related to such fraud, concealment or misrepresentation. Coverage for other benefits will continue until the cancellation is effective.

**Maine Residents**
**Form #:** 05 LTP0041 20 11 13
The "Free Look Period" shown on page 1 is deleted and replaced as follows:

If You are not satisfied for any reason, You may return Your policy to Red Sky Travel Insurance within 14 days after receipt. Your premium will be refunded, provided You have not already departed on the Trip or filed a claim. When so returned, all coverages under the policy are cancelled from the beginning.

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against

Us more than 3 years after the time required for giving proof of loss. This 3 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

Any post-judgment interest for a claim brought against Us will be paid outside the policy limits and in accordance with Maine law.

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be denied and/or cancelled, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented.

Under **Section VI – General Provisions,** the following provisions have been added to the policy:

**Cancellation:** We may not cancel this policy except for one or more of the following reasons:

a) nonpayment of premium;
b) fraud or material misrepresentations made by or with Your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;
c) substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to, an increase in exposure due to rules, legislation or court decision;
d) failure to comply with reasonable loss control recommendations;
e) substantial breach of contractual duties, conditions or warranties; or

The Maine Insurance Code requires that the foregoing cancellation provisions appear in all casualty insurance policies. Notwithstanding the above, this policy is non-cancellable by either party.

**Nonrenewable:** This is a nonrenewable policy.

**Maryland Residents**
**Form #:** 05 LTP0041 21 10 13

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be cancelled, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented.

**Minnesota Residents**
**Form #** 05 LTP0041 24 11 13

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented, with the intent to deceive and defraud.

**Mississippi Residents**
**Form #:** 05 LTP0041 25 10 13

The following provision on Page 1 of the policy has been deleted and replaced as follows:

This policy describes the travel insurance benefits underwritten by Arch Insurance Company, herein referred to as the "Company" or as "We", "Us" and "Our". No change to this policy shall be valid unless approved by the Company and no agent has authority to change the policy or waive any of its provisions. Please refer to the Schedule of Benefits shown on the Declarations, Schedule of Benefits or Confirmation of Benefits, which provides the Insured, also referred to as "You" or "Your", with specific information about the program You purchased.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss**: A detailed proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible. Failure to furnish such written proof within the time required shall not invalidate nor reduce any claim. Proof must, however, be furnished no later than 12 months from the time it is otherwise required, except in the absence of legal capacity.

Under **Section V – Claims Provisions, Payment of Claims** is deleted and replaced as follows:

**Payment of Claims**: We or Our designated representative, will pay a claim after receipt of acceptable proof of loss within twenty-five (25) days for claims submitted electronically and thirty-five (35) days for claims submitted in a format other than electronic. If payment is not made in these timeframes for all or portion(s) of a submitted claim, We will provide the claimant with the reason(s) why the claim is not payable or the additional information necessary to process the balance of the claim. Once the claimant provides Us with any additional information requested, the balance of the claim will then be paid within twenty (20) days of receipt by Us of the requested additional satisfactory documentation. If a claim is not denied by Us for valid reasons within the above stated timeframes or payment is not made within these timeframes, interest shall accrue on the portion of the unpaid claim at the rate of one and one-half percent (1 ½ %) per month from the date payment was due until final claim settlement or adjudication.

Benefits for Loss of life will be paid to Your designated beneficiary. If a beneficiary is not otherwise designated by You, benefits for Loss of life will be paid to the first of the following surviving preference beneficiaries:
a) Your spouse;
b) Your child or children jointly;
c) Your parents jointly if both are living or the surviving parent if only one survives;
d) Your brothers and sisters jointly; or
e) Your estate.

All other benefits will be paid directly to You, unless otherwise directed. Any accrued benefits unpaid at Your death will be paid to Your estate. If You have assigned Your benefits, we will honor the assignment if a signed copy has been filed with us. We are not responsible for the validity of any assignment.

All or a portion of all benefits provided by the policy may, at Our option, be paid directly to the provider of the service(s) to You. All benefits not paid to the provider will be paid to You.

Edition 5/16

If Your age has been misstated, all amounts payable under this policy shall be what the actual premium paid would have purchased at the correct age.

If any benefit is payable to: (a) an Insured who is a minor or otherwise not able to give a valid release; or (b) Your estate, We may pay any amount due under the policy to Your beneficiary or any relative whom We find entitled to the payment. Any payment made in good faith shall fully discharge Us to any party to the extent of such payment.

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be void, if before, during or after a loss, any material fact or circumstance relating to this insurance has been fraudulently concealed or misrepresented.

**Missouri Residents**
**Form #:** 05 LTP0041 26 12 13

Under **Section III – Policy Limitations and Exclusions**, the following exclusion is deleted and replaced as follows:

2. suicide, attempted suicide or any intentionally self-inflicted injury of You, a Traveling Companion, Family Member or Business Partner booked to travel with You, while sane:

Under **Section V – Claims Provisions, Notice of Claims** is deleted and replaced as follows:

**Notice of Claim:** Notice of claim must be reported to Us within 30 days after a loss occurs or as soon as is reasonably possible. You or someone on Your behalf may give the notice. The notice should be given to Us or Our designated representative and should include sufficient information to identify You. However, no claim will be denied based upon Your failure to provide notice within such specified time, unless the failure operates to prejudice the rights of the Company, as per Missouri regulation 20CSR100-1.020.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss:** You must furnish the Company, or its designated representative, with proof of loss. This must be a detailed statement. It must be filed with the Company or its designated representative within ninety (90) days from the date of loss and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

Failure to give notice within such time will not invalidate or reduce any valid claim if it is shown not to have been reasonably possible to give such notice and that notice was then given as soon as reasonably possible thereafter.

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 10 years after the time required for giving proof of loss. This 10 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

**Oklahoma Residents**
**Form #:** 05 LTP0041 37 11 13

The "Free Look Period" shown on page 1 is deleted and replaced as follows:

If You are not satisfied for any reason, You may return Your policy to Us within 14 days after receipt. Your premium will be refunded, provided You have not already departed on the Trip or filed a claim. When so returned, all coverages under the policy are cancelled from the beginning.

The following Fraud Warning has been added to page 1 of the policy.

**WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information, is guilty of a felony.**

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be cancelled, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented.

**Oregon Residents**
**Form #:** 05 LTP0041 38 06 13

Under **Section I – Coverages,** the following **"Other Covered Events"** is deleted and replaced as follows**:**
d. You who are military, police or fire personnel being called to emergency service to provide aid or relief for a Natural Disaster or a Terrorist Incident;

Under **Section I – Coverages,** the following **"Other Covered Events"** has been added**:**

i. a Terrorist Incident that occurs within 30 days of Your Scheduled Departure Date in a city listed on the itinerary of Your Trip.

Under **Section II – Definitions, Domestic Partner** is deleted and replaced as follows:

**"Domestic Partner"** means an individual joined in a Domestic Partnership.

Under **Section II – Definition of Domestic Partnership** has been added to the policy:

"**Domestic Partnership**" means a civil contract entered into in person between two individuals of the same sex who are at least 18 years of age, who are otherwise capable and at least one of whom is a resident of Oregon.

Under **Section II – Definitions,** the following definition has been added:
**"Terrorist Incident"** means an incident deemed a terrorist attack by the United States government or act of violence, other than civil disorder or riot (that is not an act of war, declared or undeclared), that results in Loss of life or major damage to person or property, by any person acting on behalf of or in connection with any organization which is generally recognized as having the intent to overthrow or influence the control of any government. Terrorist Incident does not mean an incident that occurs in a foreign

location on the U.S. State Department's Do Not Travel list.

The following exclusion has been added to **Section III – Policy Limitation and Exclusions:**

9. a Terrorist Incident that occurs in a foreign location on the U.S. State Department's Do Not Travel list.

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted in its entirety.

**South Carolina Residents**
**Form #:** 05 LTP0041 41 07 13

Under **Section V – Claims Provisions, Notice of Claim** is deleted and replaced as follows:

**Notice of Claim**: Notice of claim must be reported to Us within 20 days after a loss occurs or as soon as is reasonably possible. You or someone on Your behalf may give the notice. The notice should be given to Us or Our designated representative and should include Your name and the policy number.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss**: Proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible. If it was not reasonably possible to give written proof in the time required, We may not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. Proof must, however, be furnished no later than 12 months from the time it is otherwise required, except in the absence of legal capacity.

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive written proof of loss. No legal action for a claim can be brought against Us more than 6 years after the time required for giving written proof of loss. This 6 year time period is extended from the date written proof of loss is filed and the date the claim is denied in whole or in part.

The following provision has been added under **Section VI – General Provisions**:

**Conformity with State Statutes:** Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which You reside, on that date is amended to conform to the minimum requirements of such laws.

**South Dakota Residents**
**Form #:** 05 LTP0041 42 11 13

Under **Section II – Definitions, Domestic Partner** is deleted and replaced as follows:

**"Domestic Partner"** where permitted by law means an opposite or same-sex partner who is at least eighteen (18) years of age and has met all the following requirements for at least 6 months:

1) Resides with You;
2) Shares financial assets and obligations with You;
3) Is not related by blood to You to a degree of closeness that would prohibit a legal marriage;
4) Neither You nor Your Domestic Partner is married to anyone else, or has any other Domestic Partner.

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 6 years after the time required for giving proof of loss. This 6 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

**Tennessee Residents**
**Form #:** 05 LTP0041 43 06 13
The following Company toll free phone number has been added to Page 1 of the policy:

**Arch Insurance Company**
Administrative Office: 300 Plaza Three
Jersey City, NJ 07311
Toll Free Number: 1-866-413-5550

Under **Section II – Definitions,** the following definitions are deleted and replaced as follows:

**"Accident"** means a sudden, unexpected, unintended event that occurs at an identifiable time and place, and shall also include exposure resulting from a mishap to a conveyance in which You are traveling.

**"Sickness"** means an illness or disease of the body that: 1) requires examination and treatment by a Physician, and 2) commences while Your coverage is in effect. An illness or disease of the body that manifests itself and then worsens or becomes acute prior to the Effective Date of Your coverage is not a Sickness as defined herein and is not covered by the policy.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss**: Proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible. Failure to furnish proof of loss within the time required shall not invalidate or reduce any claim if it was not reasonably possible to give proof of loss within such time. Proof must, however, be furnished no later than 12 months from the time it is otherwise required, except in the absence of legal capacity.

**Section V – Claims Provisions, Payment of Claims** is deleted and replaced as follows:

**Payment of Claims**: Benefits for Loss of life will be paid to Your designated beneficiary. If a beneficiary is not otherwise designated by You, benefits for Loss of life will be paid to the first of the following surviving preference beneficiaries:

a) Your spouse;
b) Your child or children jointly;
c) Your parents jointly if both are living or the surviving parent if only one survives;
d) Your brothers and sisters jointly; or
e) Your estate.
All other benefits will be paid directly to You, unless otherwise directed. Any accrued benefits unpaid at Your death will be paid to Your estate. If You have assigned Your benefits, we will honor the assignment if a

signed copy has been filed with us. We are not responsible for the validity of any assignment. Payment of claims to a minor will be limited to $1,000 for Loss of life benefits.

All or a portion of all benefits provided by the policy may, at Our option, be paid directly to the provider of the service(s) to You. All benefits not paid to the provider will be paid to You.

If any benefit is payable to: (a) an Insured who is a minor or otherwise not able to give a valid release; or (b) Your estate, We may pay any amount due under the policy to Your beneficiary or any relative whom We find entitled to the payment. Any payment made in good faith shall fully discharge Us to any party to the extent of such payment.

**Texas Residents**
**Form #:** 05 LTP0041 44A 08 13 & 05 LTP0041 44B 10 13

Under **Section IV- Coverage Provisions, When Coverage Ends**, the following provision has been added:

Coverage will not end solely because a person becomes an elected official.

Under **Section V – Claims Provisions, Notice of Claim** is deleted and replaced as follows:

**Notice of Claim:** Notice of claim must be reported to Us within 30 days after a loss occurs or as soon as is reasonably possible. You or someone on Your behalf may give the notice. The notice should be given to Us or Our designated representative and should include sufficient information to identify You.

No later than the 15th day after receipt of such notice of a claim, We will: a) acknowledge receipt of the claim; b) commence any investigation of the claim; and c) request from You all items, statements, and forms that We reasonably believe, at that time, will be required from You. Additional requests may be made if during the investigation of the claim such additional requests are necessary. If acknowledgement of the claim is not made in writing, We will make a record of the date, means, and content of the acknowledgement.

Under **Section V – Claims Provisions, Claim Acceptance or Rejection** provision has been added:

**Claim Acceptance or Rejection:** We will notify You in writing, of the acceptance or rejection of the claim no later than the 15th Business Day after the date We receive all items, statements, and forms required by Us, in order to secure final proof of loss. If We reject the claim, We will inform You of the reasons for the rejection. If We are unable to accept or reject the claim within 15 Business Days after the date We receive all items, statements, and forms required by Us, We will notify You within such 15 Business Day period. The notice provided will give the reasons why We need additional time. No later than the 45th day after the date We notify You of the need for additional time to investigate a claim, We will accept or reject the claim.

"Business Day" means a day other than a Saturday, Sunday, or holiday recognized by the State.

Under **Section V – Claims Provisions, Payment of Claims** is deleted and replaced as follows:

**Payment of Claims:** All other benefits will be paid directly to You, unless otherwise directed. Any accrued benefits unpaid at Your death will be paid to Your estate. If You have assigned Your benefits, we will honor the assignment if a signed copy has been filed with us. We are not responsible for the validity of any assignment.

All or a portion of all benefits provided by the policy may, at Our option, be paid directly to the provider of the service(s) to You. All benefits not paid to the provider will be paid to You.

If any benefit is payable to: (a) an Insured who is a minor or otherwise not able to give a valid release; or (b) Your estate, We may pay any amount due under the policy to Your beneficiary or any relative whom We find entitled to the payment. Any payment made in good faith shall fully discharge Us to any party to the extent of such payment.

If We notify You that We will pay a claim or part of a claim, We will pay the claim no later than the fifth Business Day after the notice

has been made. If payment of the claim or part of the claim is conditioned on the performance of an act by You, We will pay the claim not later than the fifth Business Day after the date the act is performed.

Under **Section V – Claims Provisions**, the following provision has been added:

In the event of a weather-related catastrophe or major Natural Disaster, as defined by the commissioner, the claim handling deadlines imposed under Section V – Claims Provisions are extended for an additional 15 days.

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us more than two years and one day after the loss starting from the date the claim is denied in whole or in part.

Under **Section VI – General Provisions**, the following provisions have been added to the policy:

**Cancellation:** This policy may not be cancelled based solely on the fact that the You are an elected official. If the policy has been in effect for 60 days or less, We may cancel for any reason. If the policy has been in effect for more than 60 days, We may cancel for the following reasons:

a) nonpayment of premium;
b) fraud in obtaining coverage under this policy;
c) an increase in hazard within Your control which would produce an increase in the rate;
d) loss of Our reinsurance covering all or part of the risk covered by this policy; or
e) We are placed in supervision, conservatorship, or receivership, if the cancellation is approved or directed by the supervisor, conservator or receiver.

We shall mail or deliver written notice of cancellation to You at the address shown in the Declarations, Schedule of Benefits or Confirmation of Benefits at least 10 days prior to the effective date of cancellation. The mailing of such notice shall be sufficient notice of cancellation.

**Nonrenewable**: This is a nonrenewable policy.

**Utah Residents**
**Form #:** 05 LTP0041 45 10 13

The "Free Look Period" shown on page 1 is deleted and replaced as follows:

If You are not satisfied for any reason, You may return Your policy to Red Sky Travel Insurance within 30 days after receipt. Your premium will be refunded, provided You have not already departed on the Trip or filed a claim. When so returned, all coverages under the policy are void from the beginning.

The following provision is added to **Section IV, Coverage Provisions:**

**Dispute Resolution** Any matter in dispute between You and Us may be subject to arbitration as an alternative to court action pursuant to the Federal Rules of Civil Procedure, a copy of which is available on request from Us. Any decision reached by arbitration shall be binding upon both You and Us, The arbitration award may include attorney's fees if allowed by state law and may be entered as a judgment in any court of proper jurisdiction.

Under **Section V – Claims Provisions, Proof of Loss** is deleted and replaced as follows:

**Proof of Loss**: Proof of loss must be provided within 90 days after the date of the loss or as soon as is reasonably possible. Failure to give notice or file proof of loss as required does not bar recovery under the policy if We fail to show We were prejudiced by the failure.

Under **Section VI – General Provisions, Concealment and Misrepresentation** is deleted and replaced as follows:

**Concealment and Misrepresentation:** The entire coverage will be cancelled, if before, during or after a loss, any material fact or circumstance relating to this insurance has been concealed or misrepresented.

**Virginia Residents**
**Form #:** 05 LTP0041 47 12 13

Under **Section VI – General Provisions,** the following provisions have been added:

**Bankruptcy and Insolvency:** Your insolvency or bankruptcy, or the insolvency of Your estate, shall not relieve Us of any of Our obligations under this policy. Any party who has obtained a judgment against You, which is returned unsatisfied, may bring an action against Us to recover damages insured by the policy.

**Cancellation:** After 14 days of Your receipt of this policy, this policy cannot be cancelled by You or Us.

**Wyoming Residents**
**Form #:** 05 LTP0041 51 11 13

Under **Section VI – General Provisions, Legal Actions** is deleted and replaced as follows:

**Legal Actions:** No legal action for a claim can be brought against Us until 60 days after We receive proof of loss. No legal action for a claim can be brought against Us more than 4 years after the loss. This 4 year time period is extended from the date proof of loss is filed and the date the claim is denied in whole or in part.

# Exhibit B

**Insurance Claim**
**Ronald E. Osborn**
**Ikon Season Pass Order** ████████

**Recitals**

Whereas on March 4, 2019, California Governor Gavin Newsom proclaimed "a state of emergency to exist in California as a result of the threat of COVID-19";

Whereas on March 19, California Executive Order N-33-20 and the State Public Health Officer ordered "all individuals living in the State of California" to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal infrastructure sector";

Whereas Executive Order N-33-20 additionally empowered "the Office of Emergency Services to take necessary steps to ensure compliance with this Order", including by imposing both fines and/or imprisonment on any person in violation of the stay home order;

Whereas the California Health and Safety Code (HSC 120145) clarifies that the State Department of Health Services "may **quarantine**…cities, or localities, whenever in its judgment the action is necessary to protect or preserve the public health";

Whereas the above orders by the State between March 4 and March 19, together with existing California laws, constitute a legal quarantine of California residents, including in "cities, or localities," due to the COVID-19 pandemic;

Whereas Red Sky Travel Insurance provides coverage for "season pass interruption" including for an individual being "**quarantined**" (under "Other covered events", paragraph "a.");

Whereas Alterra Mountain Company became the defendant in a class action lawsuit filed on April 14 for the company's failure to provide even partial reimbursements to its Ikon Season Pass holders due to season interruption related to California Executive Order N-33-20 and HSC 120145 quarantine rules;

**Claim**

Therefore I, Ronald E. Osborn, on this date of April 27, 2020, am filing an insurance claim with Red Sky Travel Insurance for season pass interruption from March 19 onward due to state-mandated quarantine.

_____          04-27-2020
                                       _____
Dr. Ronald E. Osborn                   Date

████████████

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

RONALD OSBORN

_____
*Plaintiff*

v.

ARCH INSURANCE CO., and OUT OF TOWNE,
LLC, D/B/A RED SKY TRAVEL INSURANC

_____
*Defendant*

)
)
)
)
)
)
)
)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Arch Insurance Company
300 Plaza Three
Jersey City, New Jersey 07311

Out of Towne, LLC
6001 Harbour View Blvd
Suffolk, Virginia 23435

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Yeremey Krivoshey
1990 North California Blvd., Suite 940
Wanut Creek, CA 94596

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____05/26/2020_____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏  I returned the summons unexecuted because _____ ; or

❏  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____                         _____
                                                                                                          *Server's signature*

                                                                         _____
                                                                                                          *Printed name and title*

                                                                         _____
                                                                                                          *Server's address*

Additional information regarding attempted service, etc:

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
RONALD OSBORN

### DEFENDANTS
ARCH INSURANCE CO., and OUT OF TOWNE, LLC, D/B/A RED SKY TRAVEL INSURANC

**(b)** County of Residence of First Listed Plaintiff    Riverside County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Hudson County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Andrew Obergfell
888 Seventh Ave
New York, NY 10019

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)(2)(A)
Brief description of cause:
Breach of insurance contract for failure to provide coverage under ski insurance policy

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Query    Reports    Utilities    Help    Log Out

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:20-cv-06345-ES-CLW

OSBORN v. ARCH INSURANCE COMPANY et al          Date Filed: 05/26/2020
Assigned to: Judge Esther Salas                 Jury Demand: Plaintiff
Referred to: Magistrate Judge Cathy L. Waldor   Nature of Suit: 190 Contract: Other
Cause: 28:1332 Diversity-Insurance Contract     Jurisdiction: Diversity

**Plaintiff**

**RONALD OSBORN**                  represented by   **ANDREW JOSEPH OBERGFELL**
*individually and on behalf of all others*         BURSOR & FISHER PA
*similarly situated*                               888 SEVENTH AVENUE
                                                   NEW YORK, NY 10106
                                                   646-837-7129
                                                   Email: aobergfell@bursor.com
                                                   *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**ARCH INSURANCE COMPANY**

**Defendant**

**OUT OF TOWNE, LLC**
*doing business as*
RED SKY TRAVEL INSURANCE

| Date Filed | # | Docket Text |
|---|---|---|
| 05/26/2020 | 1 | COMPLAINT against ARCH INSURANCE COMPANY, Out of Towne, LLC, d/b/a Red Sky Travel Insurance ( Filing and Admin fee $ 400 receipt number ANJDC-10858524) with JURY DEMAND, filed by RONALD OSBORN. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Summons, # 4 Civil Cover Sheet)(OBERGFELL, ANDREW) (Entered: 05/26/2020) |
| 05/26/2020 |   | Case Assigned to Judge Esther Salas and Magistrate Judge Cathy L. Waldor. (ak, ) (Entered: 05/27/2020) |
| 05/27/2020 | 2 | SUMMONS ISSUED as to ARCH INSURANCE COMPANY, OUT OF TOWNE, LLC. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (lag, ) (Entered: 05/27/2020) |
| 06/03/2020 | 3 | Exhibit to 1 Complaint, *Corrected Exhibit B to Complaint* by RONALD OSBORN. (OBERGFELL, ANDREW) (Entered: 06/03/2020) |
| 06/09/2020 | 4 | MOTION for Leave to Appear Pro Hac Vice *Jonas Jacobson* by RONALD OSBORN. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(OBERGFELL, ANDREW) (Entered: 06/09/2020) |

| 06/09/2020 | 5 | MOTION for Leave to Appear Pro Hac Vice *Simon Franzini* by RONALD OSBORN. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(OBERGFELL, ANDREW) (Entered: 06/09/2020) |
| 06/09/2020 | 6 | MOTION for Leave to Appear Pro Hac Vice *Yeremey Krivoshey* by RONALD OSBORN. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(OBERGFELL, ANDREW) (Entered: 06/09/2020) |
| 06/09/2020 | 7 | CERTIFICATE OF SERVICE by RONALD OSBORN *Arch Insurance Company* (OBERGFELL, ANDREW) (Entered: 06/09/2020) |
| 06/09/2020 | 8 | CERTIFICATE OF SERVICE by RONALD OSBORN *Red Sky Insurance* (OBERGFELL, ANDREW) (Entered: 06/09/2020) |
| 06/10/2020 | | Set Deadlines as to 4 MOTION for Leave to Appear Pro Hac Vice *Jonas Jacobson*, 6 MOTION for Leave to Appear Pro Hac Vice *Yeremey Krivoshey*, 5 MOTION for Leave to Appear Pro Hac Vice *Simon Franzini*. Motion set for 7/6/2020 before Judge Esther Salas. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (lag, ) (Entered: 06/10/2020) |
| 06/10/2020 | 9 | ORDER GRANTING ADMISSION PRO HAC VICE as to Jonas Jacobson, Esq., etc. Signed by Magistrate Judge Cathy L. Waldor on 6/10/2020. (lag, ) (Entered: 06/11/2020) |
| 06/10/2020 | 10 | ORDER GRANTING ADMISSION PRO HAC VICE as to Simon Franzini, Esq., etc.. Signed by Magistrate Judge Cathy L. Waldor on 6/10/2020. (lag, ) (Entered: 06/11/2020) |
| 06/10/2020 | 11 | ORDER GRANTING ADMISSION PRO HAC VICE as to Yeremey Krivoshey, Esq., etc.. Signed by Magistrate Judge Cathy L. Waldor on 6/10/2020. (lag, ) (Entered: 06/11/2020) |

**PACER Service Center**

**Transaction Receipt**

06/16/2020 14:54:05

| PACER Login: | dhpotts24 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:20-cv-06345-ES-CLW Start date: 1/1/1971 End date: 6/16/2020 |
| Billable Pages: | 2 | Cost: | 0.20 |